[No. E046290. Fourth Dist., Div. Two. Dec. 21, 2009.]

THE PEOPLE, Plaintiff and Respondent, v.
JEFFREY WAYNE TARRIS, Defendant and Appellant.

614

**COUNSEL**

Joanna Rehm, under appointment by the Court of Appeal, for Defendant and Appellant.

Edmund G. Brown, Jr., Attorney General, Dane R. Gillette, Chief Assistant Attorney General, Gary W. Schons, Assistant Attorney General, and Steve Oetting, Deputy Attorney General, for Plaintiff and Respondent.

**OPINION**

GAUT, J.—Defendant Jeffrey Wayne Tarris appeals from judgment entered following jury convictions for unlawful disposal of hazardous waste (§ 25189.5, subd. (b);[1] count 1), unlawful transport of hazardous waste (§ 25189.5, subd. (c); count 2), and littering in commercial quantities, a misdemeanor (Pen. Code, § 374.3, subd. (h)(1); count 3).

The trial court suspended defendant's sentence and placed him on 36 months' probation, conditional upon defendant serving 90 days in county jail. Defendant was also assessed court security fees, $3,560 under Penal Code section 374.3 in fines and penalty assessments, and $35,600 in fines and penalty assessments under section 25189.5, subdivision (e). In addition, defendant was ordered to pay a restitution fee of $8,532.15 to the Riverside County Department of Environmental Health, Hazardous Materials Management Division (HMMD) and $1,643.37 to the Riverside County Department of Transportation. The court also imposed an $800 restitution fine under Penal Code section 1202.4, subdivision (b), and a probation revocation restitution fine under Penal Code section 1202.44, which was stayed.

Defendant contends the evidence was insufficient to support his unlawful transport conviction (count 2) and the trial court did not have authority to require defendant to pay a restitution fee of $8,532.15 for the costs of investigation. In addition, defendant asserts remand is necessary because the trial judge failed to provide a breakdown of the fees, fines and penalty assessments imposed on each count.

After defendant filed his opening brief, the trial court provided a breakdown of the fees, fines and penalty assessments imposed. As to counts 1 and 2, the court assessed a base fine of $4,675.50, plus $13,124.50 in penalties and assessments as to each count.

After the court provided the breakdown of fines, defendant filed a supplemental appellate brief with this court, arguing that under Penal Code section 654, the court was barred from imposing restitution fines on both the disposal count (count 1) and the transport count (count 2). Defendant also argues the trial court improperly imposed excessive court security fees and a $30 court construction fund fee.

We conclude there was sufficient evidence to support defendant's convictions and the trial court did not abuse its discretion in ordering defendant to pay HMMD for the costs of investigation as a condition of probation.

---

[1] Unless otherwise noted, all statutory references are to the Health and Safety Code.

The trial court erred, however, in imposing restitution fines under section 25189.5, subdivision (e), as to both counts 1 and 2, without staying the fine as to one of the two counts. Imposing duplicate fines constituted multiple punishment for the same act or course of conduct in violation of Penal Code section 654. In addition, the court erred in imposing excessive court security fees and in assessing a court construction fee. We affirm defendant's convictions but reverse his sentence, and order the matter remanded for resentencing.

## 1. Facts

Defendant leased space to six families on his undeveloped parcel of land off Agate Street in Riverside. The families lived on the land in motor homes or trailers. In May 2006, one of defendant's tenants, Martha Sanders, went on vacation out of state. Her live-in boyfriend, Herdo Ramirez, also known as Jerry, remained at Martha's motor home.

Jerry kept outside Martha's home a metal shelving unit, where Jerry stored cans of paints and other chemicals. Martha explained at trial that Jerry "scrapped." He collected and saved items that could be used, sold or given away. He kept containers of chemicals and paints on metal shelves outside her motor home.

On June 13, 2006, defendant asked a county road crew working in the area if the road crew was going to be cleaning up Agate Street. The crew chief told defendant the crew would clear debris only if it was on county property. At that time the crew chief was aware there were only a couple of items that needed to be cleared. He had not seen any hazardous waste there.

Later, at the end of that day, the road crew returned to the same area by the water channel, off the side of Agate Street, and discovered there was a truckload of trash. Because there was too much to clear, the crew decided to clear the trash the next day.

Martha's brother, Gilbert Sanders, Sr. (Gilbert), and Gilbert's son, Gilbert Sanders, Jr. (Junior), who also lived on defendant's property, testified that on June 14, 2006, they saw defendant use his Bobcat loader to move Jerry and Martha's possessions off defendant's land. Gilbert and Junior saw defendant driving his Bobcat down a dirt road off defendant's property toward Agate. Junior also noticed property belonging to Martha on the side of Agate Street as well. The pile of trash had increased from the day before. There was a camper shell, which defendant had loaded up with Jerry and Martha's possessions and transported on the Bobcat to the side of the road. The trash

on the side of the road also included Jerry's chicken coop, doghouse, car battery, and the metal shelving unit with paint and chemicals.

On June 14, 2006, the Riverside County Transportation Department received an anonymous call reporting that trash was blocking Agate Street. In response, county assistant district road maintenance supervisor, Jeffrey Lewellen, went out to the site that same day. He found a pile of trash, including containers of paint and chemicals, dumped in the road, blocking part of a lane. Lewellen called Kelly Winters at Riverside County Department of Environmental Health.

Hazardous materials management specialist Kelly Winters testified that a county road department supervisor called him and told him about the pile of trash (15 to 20 cubic yards of trash and waste), which appeared to include hazardous waste. Winters went out to the site. The debris was located on the side of the road, about 10 feet from a water channel. The debris included oil-based and latex paints, resin hardener, carpet cement, two five-gallon containers of waste oil, rust primer, pipe cement, and lock tight cement. Some of the containers were unlabeled and some had warning labels. Some of the contents in the containers were tested and found to contain hazardous waste.

Riverside County District Attorney Investigator Joseph Asbury, who was assigned to the environmental crimes unit, testified that on June 14, 2006, he responded to a call from Winters, requesting Asbury to come out to Agate Street. Asbury observed the pile of debris.

Asbury spoke to defendant that same day. Asbury explained to him that he was investigating the illegal dumping of trash and hazardous waste on the roadside and was curious as to how the trash got there. Defendant said he had moved the trash off his property onto his neighbor's adjacent property. Defendant was in the process of cleaning up his property in response to county code enforcement telling him to remove the trash from his property.

Defendant told Asbury on June 14, 2006, that he had talked to someone from the county road department the day before about removing trash left on the side of the road. The road department crew said they were going to remove the trash. Defendant asked about also removing the trash on his neighbor's property. The road crew said they could not remove trash from private property. As a consequence, defendant moved the trash on his neighbor's property to the roadway so the county would pick it up. Defendant neither admitted to Asbury nor denied dumping the hazardous waste.

Defendant testified that Martha told him she intended to stay in Kansas and hoped Jerry would join her. Defendant decided to evict Martha and Jerry. At

the beginning of June, after defendant was cited for code enforcement violations, defendant told all his tenants, including Jerry, to move off the property. Defendant told Jerry he needed to remove his property as soon as possible. Jerry said he would take care of things when he got back from picking up some scrap metal but Jerry did not return to pick up his belongings.

Around June 7, 2006, defendant evicted Jerry and Martha. He loaded most of their belongings into their motor home and used his Bobcat to push the motor home onto defendant's neighbor's property. Defendant admitted moving Jerry's shelving unit with the containers of paint and chemicals off defendant's property, but claimed he deposited it next to Martha's motor home located on the neighbor's property.

Around the 1st of June, defendant saw two five-gallon cans of used motor oil abandoned in the flood channel along Agate Street. Defendant did not know who put the cans of oil there. A neighbor, Susan Powers, who lived near the water channel, testified that the cans of oil showed up several weeks before the other trash.

Defendant testified that on June 13, 2006, he called the county and reported there was a lot of trash on the side of Agate Street, including a doghouse and chicken coop that belonged to Jerry. Three or four days earlier, defendant had moved the doghouse and chicken coop to his neighbor's property. When defendant saw the county road crew on June 13, 2006, he thought they could remove the trash on the side of the road in the flood channel. Defendant asked one of the workers if he was going to clean up the trash. The crew member said that, after finishing up at another site, he planned on picking up the trash on the north side but not the south side of the culvert.

Defendant asked the crew member what would happen if he moved the trash from the south to the north side. The crew worker said he would take it. Defendant then went home, got his Bobcat, loaded it with a black truck bed liner full of trash and deposited the trash on the north side of the culvert. Defendant denied moving Jerry's shelves and cans of paint and chemicals to the north side of the culvert. The last time defendant saw those items, they were on his neighbor's property, where defendant had moved them.

Defendant noticed that the next day, June 14, 2006, the pile of trash had grown and someone had added Jerry's shelving unit and containers of chemicals. Defendant called the county again on June 14 and asked when the county was going to clean up the trash.

## 2. Sufficiency of Evidence

Defendant contends there was insufficient evidence to support his conviction for unlawful transport of hazardous waste. (§ 25189.5, subd. (c); count 2.)

"In assessing the sufficiency of the evidence, we review the entire record in the light most favorable to the judgment to determine whether it discloses evidence that is reasonable, credible, and of solid value such that a reasonable trier of fact could find the defendant guilty beyond a reasonable doubt. [Citations.] Reversal on this ground is unwarranted unless it appears 'that upon no hypothesis whatever is there sufficient substantial· evidence to support [the conviction].' [Citation.]" (*People v. Bolin* (1998) 18 Cal.4th 297, 331 [75 Cal.Rptr.2d 412, 956 P.2d 374].)

■ Section 25189.5, subdivision (c), states it is unlawful for "[a]ny person [to] knowingly transport[s] or cause[s] the transportation of hazardous waste . . . ." Defendant contends the items he transported were not yet "hazardous waste" within the meaning of section 25189.5, subdivision (c), because they had not yet been discarded and, thus, were not "waste" when transported.

"Hazardous waste" is defined by the state Department of Toxic Substances Control pursuant to its regulatory authority under sections 25117 and 25141. (§§ 25501, subd. (q), 25117, 25141; Cal. Code Regs., tit. 22, § 66261.1 et seq.) California Code of Regulations, title 22, section 66261.10, subdivision (a)(1), adopted in 1991, defines hazardous waste in principal part as a waste that "pose[s] a substantial present or potential hazard to human health or the environment when it is improperly treated, stored, transported, disposed of or otherwise managed . . . ." " 'Waste' means any discarded material of any form . . . ." (Cal. Code Regs., tit. 22, § 66261.2, subd. (a); see also § 25124.)

Defendant does not dispute that the transported materials were hazardous. Rather, citing section 25116, he argues that they did not constitute "waste" until after defendant transported and discarded them. Section 25116 states: " 'Handling' means the transporting or transferring from one place to another, or pumping, processing, storing, or packaging of hazardous waste, *but does not include the handling of any substance before it becomes a waste*." (Italics added.)

The issue here is thus whether there was substantial evidence establishing that when defendant transported the hazardous materials, they constituted "waste" under section 25189.5, subdivision (c). There was ample evidence

supporting such a finding that the cans of opened and unopened house paint, oil, thinner, tubes of cement glue, and other chemical products constituted waste. Even though the discarded materials belonged to defendant's tenant, Jerry, defendant had evicted Jerry and told him to remove his belongings from defendant's property and move off the property. Rather than complying with defendant's demand, Jerry left and said he would do it later. According to defendant, Jerry did not do so.

Because defendant had been cited and told by a county code enforcement officer to clean up his property prior to reinspection, defendant proceeded to clean up his property and told his tenants to remove their belongings, move off the property, and clean up their mess immediately. Since Jerry failed to do so, defendant removed Jerry's property, which included hazardous materials.

Under such circumstances, there is overwhelming evidence that, because Jerry had not removed his belongings from defendant's property as requested, defendant considered the property waste and decided to dispose of it by loading it on his Bobcat and transporting Jerry's property to the side of the road and dumping it where defendant assumed the county would clean it up.

■ Defendant argues that Jerry's property did not constitute waste because Jerry had intended to keep and use the property. But a reasonable juror could conclude defendant considered the property trash and proceeded to treat it as such by removing it from his property and dumping it on the street. As the saying goes, one person's trash is another person's treasure. Here, there was ample evidence that, when defendant transported and dumped Jerry's property, including the hazardous materials, defendant considered it trash.

### 3. Cost of Investigation

Defendant contends the trial court erred in ordering him to reimburse HMMD for the costs of investigation of the hazardous waste offenses. HMMD Deputy Director Paul Tavares submitted an invoice to the probation officer requesting reimbursement of $8,532.15, the cost of investigating defendant's offenses of transporting and dumping hazardous waste on county property. The trial court ordered defendant to reimburse HMMD for this expense as a condition of probation.

"We review the trial court's restitution order for abuse of discretion. [Citation.] A restitution order that is based on a demonstrable error of law constitutes an abuse of the trial court's discretion. [Citation.]" (*People v. Woods* (2008) 161 Cal.App.4th 1045, 1048–1049 [74 Cal.Rptr.3d 786] (*Woods*).)

■ Citing *People v. Baker* (1974) 39 Cal.App.3d 550 [113 Cal.Rptr. 248] (*Baker*) and *People v. Torres* (1997) 59 Cal.App.4th 1 [68 Cal.Rptr.2d 644] (*Torres*), defendant argues reimbursement for investigation and prosecution costs is improper. As explained in *Baker*, "Penal Code section 1203.1 creates and limits the trial court's power to grant probation. [Citation.] It provides in part that the trial court 'may in connection with granting probation . . . provide for reparation in proper cases' and 'may impose and require . . . other reasonable conditions, as it may determine are fitting and proper to the end that justice may be done, that amends may be made to society for the breach of the law, for any injury done to any person resulting from such breach and generally and specifically for the reformation and rehabilitation of the probationer. . . .' The courts interpret the term *reparation* in [Penal Code] section 1203.1 to mean reimbursement to the victims of crime for actual loss flowing from the charged offense or from related misconduct. [Citations.] The government may be the beneficiary of that reimbursement if it has incurred actual loss due to the crime, as in the instance of tax evasion or theft of government property, but *reparation* does not include the general costs of prosecuting and rehabilitating criminals." (*Baker, supra*, 39 Cal.App.3d at p. 559.)

Penal Code section 1202.4, which implements the constitutional right to restitution, further provides "that a victim of crime who incurs any economic loss as a result of the commission of a crime shall receive restitution directly from any defendant convicted of that crime." (Pen. Code, § 1202.4, subd. (a)(1).)

■ Subdivision (a)(3)(B) of Penal Code section 1202.4 requires the court to order the defendant to pay "[r]estitution to the victim or victims, if any, in accordance with subdivision (f)." Subdivision (f) of Penal Code section 1202.4 provides that "in every case in which a victim has suffered economic loss as a result of the defendant's conduct, the court shall require that the defendant make restitution to the victim or victims in an amount established by court order, based on the amount of loss claimed by the victim or victims or any other showing to the court."

In discussing restitution to a crime victim, the court explains in *Woods, supra*, 161 Cal.App.4th 1045, that the Penal Code section 1202.4 "limitation does not apply in the context of grants of probation. 'California courts have long interpreted the trial courts' discretion to encompass the ordering of restitution as a condition of probation even when the loss was not necessarily caused by the criminal conduct underlying the conviction.' " (*Woods*, at p. 1050, quoting *People v. Carbajal* (1995) 10 Cal.4th 1114, 1121 [43 Cal.Rptr.2d 681, 899 P.2d 67].)

Here, the trial court suspended defendant's sentence and granted defendant probation conditional upon certain terms, including defendant's reimbursing HMMD for its costs in investigating defendant's crimes. The trial court thus "relied on the trial court's broad discretion to set probationary terms under [Penal Code] section 1203.1, subdivision (j), and specific statutory language in [Penal Code] section 1203.04, subdivision (g) that declared the legislative intent *not* to abrogate the trial court's broad discretion to fashion conditions of probation." (*People v. Lai* (2006) 138 Cal.App.4th 1227, 1248 [42 Cal.Rptr.3d 444] (*Lai*); see also *Woods, supra*, 161 Cal.App.4th at pp. 1050–1051; *People v. Giordano* (2007) 42 Cal.4th 644, 663, fn. 7 [68 Cal.Rptr.3d 51, 170 P.3d 623] (*Giordano*).)

Penal Code section 1203.1, subdivision (a), provides in relevant part: "The court, or judge thereof, in the order granting probation, may suspend the imposing or the execution of the sentence . . . . [¶] . . . The following shall apply to this subdivision: [¶] . . . [¶] (3) The court shall provide for restitution in proper cases. The restitution order shall be fully enforceable as a civil judgment forthwith and in accordance with Section 1202.4 of the Penal Code."

Penal Code section 1203.1, subdivision (j), provides in part: "The court may impose and require any . . . terms of imprisonment, fine, and conditions, and other reasonable conditions, as it may determine are fitting and proper to the end that justice may be done, that amends may be made to society for the breach of the law, for any injury done to any person resulting from that breach, and generally and specifically for the reformation and rehabilitation of the probationer, and that should the probationer violate any of the terms or conditions imposed by the court in the matter, it shall have authority to modify and change any and all the terms and conditions and to reimprison the probationer in the county jail within the limitations of the penalty of the public offense involved."

The question then becomes whether the court's statutory power to impose *other reasonable conditions* of probation under Penal Code section 1203.1, subdivision (j), or "costs of an emergency response" under section 1203.1, subdivision (e), includes the power to require defendant to reimburse the county for the costs of investigation.

Under the criteria stated in *People v. Lent* (1975) 15 Cal.3d 481, 486 [124 Cal.Rptr. 905, 541 P.2d 545], a condition of probation will not be held invalid unless it " '(1) has no relationship to the crime of which the offender was convicted, (2) relates to conduct which is not in itself criminal, and (3) requires or forbids conduct which is not reasonably related to future criminality . . . .' " With respect to the third criterion, "an order for

restitution, i.e., attempting to make a victim whole, has generally been deemed a deterrent to future criminality . . . ." (*Ibid.*; see also *Giordano, supra,* 42 Cal.4th at p. 663, fn. 7.)

The court in *People v. Rubics* (2006) 136 Cal.App.4th 452 [38 Cal.Rptr.3d 886], noted that "probation is an ' " 'act of clemency and grace,' " ' not a matter of right. [Citation.] '[T]he granting of probation is not a right but a privilege, and if the defendant feels that the terms of probation are harsher than the sentence for the substantive offense[,] he is free to refuse probation.' [Citations.] Because a defendant has no right to probation, the trial court can impose probation conditions that it could not otherwise impose, so long as the conditions are not invalid under the three *Lent* criteria." (*Id.* at pp. 459–460; see also *Giordano, supra,* 42 Cal.4th at p. 663, fn. 7.)

Here, defendant's sentence was suspended and he was placed on probation. The order, requiring defendant to reimburse HMMD for investigation costs arising from defendant's illegal acts of transporting and dumping hazardous waste on the county's property, was imposed for the purpose of making the county whole. Also, the imposition of restitution costs in this case had the salutary effect of impressing upon defendant in a tangible fashion that his illegal behavior would bring financially painful consequences. (*Baker, supra,* 39 Cal.App.3d at p. 559.) The restitution order served as a deterrent to defendant committing the same offenses again, by holding him accountable for HMMD's costs arising from defendant's crimes committed against the county. (*Giordano, supra,* 42 Cal.4th at p. 663, fn. 7.)

Defendant's reliance on *Baker, supra,* 39 Cal.App.3d 550 and *Torres, supra,* 59 Cal.App.4th 1 is misplaced. In *Baker*, the trial court ordered the defendant to pay $90,000 in restitution to the state for the costs of probation and prosecution of the physician-defendant's crime of prescribing narcotics to persons not under his treatment for a pathology. (Former § 11163.) The *Baker* court reversed the restitution order, concluding that the $90,000 restitution reimbursement condition of probation was improper since imposition of costs of prosecution and of probation was neither reparation nor a reasonable condition of probation under Penal Code section 1203.1. (*Baker, supra,* 39 Cal.App.3d at p. 560.)

The *Baker* court held that, in granting probation under Penal Code section 1203.1, the trial court may provide for "reparation," but this does not include general costs of prosecuting and rehabilitating criminals, and, therefore, the challenged condition of probation was not authorized as "reparation." (*Baker, supra,* 39 Cal.App.3d at pp. 559–560.) The *Baker* court concluded the payment requirement did not qualify as a reasonable condition under the portion of Penal Code section 1203.1 permitting imposition of " 'other reasonable conditions.' " (*Baker,* at pp. 559–560.)

In explaining its holding, the *Baker* court acknowledged that arguably "the imposition of costs has 'a salutary effect in selected cases, impressing upon [offenders] in tangible fashion that illegal behavior brings financially painful consequences. To encourage contrition, strike at the offender's pocketbook. . . .' [Citation.] But, recent legal analysis has questioned the reasonableness and usefulness of imposing costs of prosecution and probation as a condition of probation. [Citation.] The uncertainty of such costs imposes on each defendant a potentially unlimited penalty for his crime. Conceivably, the spectre of costs may even deter him from exercising his right to a jury trial on the issue of guilt or innocence." (*Baker, supra*, 39 Cal.App.3d at p. 559.)

The instant case is distinguishable from *Baker* in that here the court was not ordering reimbursement of potentially unlimited county prosecution or probation expenses. The investigation expenses were limited to a specific amount arising from HMMD's determining, prior to prosecution of the charges, who was responsible for discarding a large pile of trash on county property and whether it included hazardous waste. Payment of HMMD's investigation costs was a means of impressing upon defendant in tangible fashion that illegal behavior, consisting of attempting illegally to dispose of hazardous waste for free, brings financially painful consequences, including the cost of cleanup and investigation of the offense. Unlike in *Baker*, the spectre of paying the investigation costs as restitution was not a deterrent from exercising defendant's right to a jury trial on the issue of guilt or innocence, since it did not encompass prosecution expenses.

*Torres, supra*, 59 Cal.App.4th 1, is likewise distinguishable. In *Torres*, the court reversed the trial court's restitution order imposed at sentencing, requiring the defendant to reimburse the police agency involved in a drug sting operation for $1,425 undercover officers paid to the defendant for several purchases of methamphetamine. (*Id.* at p. 2.) The *Torres* court reversed the restitution order on the ground the police agency involved in the transactions was not a direct victim under Penal Code former section 1202.4, subdivision (p) (now Pen. Code, § 1202.4, subd. (k)(2)).

■ The *Torres* court reasoned that the restitution order was improper because it required the defendant to pay government entities, as crime victims, the general costs of prosecution: "Reading the statutory language in light of the cases described above in which restitutionary orders have been permitted only when the government agency is itself victimized we conclude the Legislature did not intend to include as a 'direct victim of a crime' a law enforcement agency that in the course of investigating criminal activity purchases illegal drugs. Therefore such an agency is not entitled to restitution for moneys spent for such drug buys under former Penal Code section 1202.4, subdivision (p)." (*Torres, supra*, 59 Cal.App.4th at pp. 4–5.)

Here, unlike in *Torres* and *Baker*, defendant's sentence was suspended and the restitution order was imposed under Penal Code section 1203.1, which provides for much broader discretion in imposing probation conditions. In addition, restitution was for reimbursing HMMD, a victim of defendant's offense, for the cost of determining who dumped waste on county property and whether the trash included hazardous waste. Under these circumstances, we conclude suspending defendant's sentence and imposing probation conditional upon defendant paying HMMD's investigation costs, as well as cleanup costs, were within the trial court's broad discretion under Penal Code section 1203.1. (*Lai, supra*, 138 Cal.App.4th at pp. 1247–1248.)

### 4. Penal Code Section 654 Bar

Defendant argues the court was barred under Penal Code section 654 from imposing fines for both the hazardous waste disposal and transportation crimes (counts 1 & 2) because the crimes were committed with a single intent and objective, that of dumping trash on the side of the road. The People argue that Penal Code section 654 is inapplicable because defendant's sentence was suspended and he was placed on probation.

Penal Code section 654, subdivision (a), provides in pertinent part: "An act or omission that is punishable in different ways by different provisions of law shall be punished under the provision that provides for the longest potential term of imprisonment, but in no case shall the act or omission be punished under more than one provision." Penal Code section 654 precludes multiple punishments not only for a single act, but also for an indivisible course of conduct. (*People v. Hester* (2000) 22 Cal.4th 290, 294 [92 Cal.Rptr.2d 641, 992 P.2d 569].) "The purpose of this statute is to prevent multiple punishment for a single act or omission, even though that act or omission violates more than one statute and thus constitutes more than one crime." (*People v. Hutchins* (2001) 90 Cal.App.4th 1308, 1312 [109 Cal.Rptr.2d 643] (*Hutchins*).)

"The question whether [Penal Code] section 654 is factually applicable to a given series of offenses is for the trial court, and the law gives the trial court broad latitude in making this determination. Its findings on this question must be upheld on appeal if there is any substantial evidence to support them." (*Hutchins, supra*, 90 Cal.App.4th at p. 1312.) The court's findings may be either express or implied from the court's ruling. (See *People v. Blake* (1998) 68 Cal.App.4th 509, 512 [80 Cal.Rptr.2d 308].) In the absence of any reference to Penal Code section 654 during sentencing, the fact that the court did not stay the sentence on any count is generally deemed to reflect an implicit determination that each crime had a separate objective. (See, e.g., *People v. Blake, supra*, at p. 512; *People v. Osband* (1996) 13 Cal.4th 622,

730–731 [55 Cal.Rptr.2d 26, 919 P.2d 640].) " 'We must "view the evidence in a light most favorable to the respondent and presume in support of the [sentencing] order the existence of every fact the trier could reasonably deduce from the evidence. [Citation.]" [Citation.]' [Citation.]" (*Hutchins, supra*, 90 Cal.App.4th at pp. 1312–1313.)

"Although the question of whether defendant harbored a 'single intent' within the meaning of [Penal Code] section 654 is generally a factual one, the applicability of the statute to conceded facts is a question of law. [Citation.]" (*People v. Harrison* (1989) 48 Cal.3d 321, 335 [256 Cal.Rptr. 401, 768 P.2d 1078] (*Harrison*).)

In the instant case, the People do not dispute that the convictions for disposal and transportation of hazardous waste constituted an indivisible course of conduct, committed with a single intent and objective. Rather, the People argue that because defendant's sentence was suspended and the order was a condition of probation, Penal Code section 654 is inapplicable. Upon suspending defendant's sentence, the court imposed probation conditional upon defendant serving 90 days in jail and paying $1,643.37 for cleanup costs, $8,532.15 to HMMD for its investigative costs, and a $35,600 "fine, fee and penalty assessment" under section 25189.5, subdivision (e).[2]

Later, during a hearing on a motion seeking a detailed breakdown of the $35,600 amount, the trial court specified in its minute order that it was imposing $17,800 in fines, penalties and assessments as to count 1, and the same amount as to count 2. The court further stated that the $17,800 amount consisted of a base fine of $4,675.50 and penalties and assessments of $13,124.50.

Defendant argues that Penal Code section 654 applies because fines imposed under section 25189.5, subdivision (e), are penal fines. Section 25189.5, subdivision (e), states in relevant part: "The court also shall impose upon a person convicted of violating subdivision (b), (c), or (d), a fine of not less than five thousand dollars ($5,000) nor more than one hundred thousand dollars ($100,000) for each day of violation, except as further provided in this subdivision. . . ."

Normally, fining defendant under section 25189.5, subdivision (e), for both the disposal and transportation crimes (§ 25189.5, subds. (b), (c)) is improper under Penal Code section 654 since such an order would constitute multiple

---

[2] During the sentencing hearing, the trial court stated it was ordering defendant to pay $35,600 pursuant to section 25189, subdivision (e). Since this statute is inapplicable, it is apparent that the trial court intended to refer to section 25189.5, subdivision (e), as stated in the minute order.

punishment for a single act or omission. (*Hutchins, supra*, 90 Cal.App.4th at pp. 1312–1313.) Here, the issue is whether Penal Code section 654 is inapplicable and multiple punishment for a single act is permissible when the sentence is suspended and the section 25189.5, subdivision (e), fine is a condition of probation. This is a question of law to be decided by this court de novo. (*Harrison, supra*, 48 Cal.3d at p. 335.)

■    Under Penal Code section 1203.1, subdivision (a)(1), "[t]he court may fine the defendant in a sum not to exceed the maximum fine provided by law in the case." Since by law, under Penal Code section 654, the court cannot impose multiple punishment for a single act, and fines constitute punishment (*People v. Hanson* (2000) 23 Cal.4th 355, 361–362 [97 Cal.Rptr.2d 58, 1 P.3d 650]), the trial court could not fine defendant under section 25189.5, subdivision (e), for the same act or course of action under Penal Code section 654, even if the court ordered payment of the fines as a condition of probation under a suspended sentence. Therefore, the court improperly imposed a restitution fine under section 25189.5, subdivision (e), for both counts 1 and 2.

We note the record is somewhat unclear as to whether the section 25189.5 fine was imposed as a condition of probation or as a fine independent of probation. It appears, based on the record as a whole, that the trial court intended to order payment of the fine as a condition of probation. The fine itself, however, is penal in nature and therefore, regardless of whether payment of the fine was imposed as a condition of probation, it was subject to Penal Code section 654. The maximum fine permissible under section 25189.5, subdivision (e), was thus limited to ordering defendant to pay the fine on either count 1 or count 2, and staying the fine on the other count.

Because the trial court stated that the $35,600 amount constituted a "fine, fee and penalty assessment" under section 25189.5, subdivision (e), ordering defendant to pay $17,800 in fines, penalties and assessments separately as to both counts 1 and 2 violated Penal Code section 654. The $17,800 restitution fine imposed on count 2 must be stayed.

### 5.   Court Security and Construction Fees

The People agree defendant's objection to the trial court's order, imposing five court security fees when he was convicted of only three offenses, is well taken. The People also agree the trial court erred in assessing a court construction fee under Government Code section 70373 because the fee statute was not yet in effect at the time of sentencing. Accordingly, these improper fees must be stricken from defendant's sentence.

6. <u>Disposition</u>

Defendant's convictions are affirmed. Defendant's sentence is reversed as to the trial court's order that defendant pay (1) a restitution fine under Health and Safety Code section 25189.5, subdivision (e), on count 2; (2) five court security fees; and (3) a court construction fee. Under Penal Code section 654, the trial court is barred from imposing restitution fines under section 25189.5, subdivision (e), as to both counts 1 and 2, without staying one of the two fines. In addition, the trial court may impose only three court security fees, not five, and assessing a court construction fee is improper. The matter is remanded to the trial court for resentencing.

Richli, Acting P. J., and Miller, J., concurred.

·  Appellant's petition for review by the Supreme Court was denied April 14, 2010, S179934. George, C. J., did not participate therein. Kennard, J., was of the opinion that the petition should be granted.