Filed 8/24/20  P. v. Camacho CA4/2

*See concurring/dissenting opinion*

## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b). This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FOURTH APPELLATE DISTRICT

## DIVISION TWO

| | |
|---|---|
| THE PEOPLE, | |
| Plaintiff and Respondent, | E071514 |
| v. | (Super.Ct.No. RIF1703502) |
| JOSE CAMACHO, | OPINION |
| Defendant and Appellant. | |

APPEAL from the Superior Court of Riverside County. L. Jackson Lucky IV, Judge. Affirmed.

David R. Greifinger, under appointment by the Court of Appeal, for Defendant and Appellant.

Xavier Becerra, Attorney General, Julie L. Garland, Assistant Attorney General, Andrew Mestman and Arlene A. Sevidal, Deputy Attorneys General, for Plaintiff and Respondent.

1

Jose Camacho committed a series of crimes against his on-again, off-again girlfriend after she told him she'd been intimate with someone else. According to her testimony at the preliminary hearing, he stole and damaged her phone, injured her severely by punching her, moved her into a bathroom without windows when she screamed for help, detained her from leaving his house, and continued to hit her as she attempted to escape. After she got away, he published nude photographs of her without her permission. He pled guilty to inflicting corporal injury, robbery, kidnapping, false imprisonment, and publishing private photographs.

Camacho doesn't appeal his conviction, but challenges aspects of his sentence. First, he argues the sentences for kidnapping, robbery, and false imprisonment must be stayed because he committed those offenses during the same course of criminal conduct during which he committed the infliction of corporal injury and all for the purpose of enabling him to inflict corporal injury.

Second, citing *People v. Dueñas* (2019) 30 Cal.App.5th 1157 (*Dueñas*), he argues the trial court violated his constitutional right to due process by imposing court operation and facilities fees without first conducting a hearing to determine his ability to pay and by imposing a restitution fine and parole revocation fees without staying them until the People had demonstrated his ability to pay.

We conclude Camacho's offenses were distinct and could be punished separately. As for the *Dueñas* errors, we conclude they were harmless. We therefore affirm the judgment.

# I

## FACTS

When these events happened, Camacho and his girlfriend had been in a stormy, on and off relationship for over three years and had recently broken up.

On August 23, 2017, they were at Camacho's home when she told him she'd done what she characterized as "something [he's] not going to forgive [her] for" and said she wanted to go home. She had already called her mother for a ride when Camacho took her phone and went outside and smashed it. Back inside, Camacho demanded to know what she'd done, and she eventually told him (despite the breakup) that she had "committed infidelity." He told her to call her mother because he wanted to "talk about this," and she told her mother not to come.

The girlfriend said she then apologized for her infidelity. Rather than talk about it, Camacho reacted violently, punching her in the eye with his fist hard enough to break her left orbital bone and cause bleeding from her nose. She fell to the floor crying and started screaming for help. Camacho tried to quiet her by placing his hand over her mouth and nose. When she didn't stop, he told her she needed to get cleaned up, put his arms around her, and led her from the kitchen down the hallway into a bathroom that didn't have a window.

She told Camacho she wanted to go home, but he asked her to stay and wait it out in his room like she had when he'd given her a black eye in a past fight. That time she'd stayed in his room for about two weeks. She said she didn't want to do that and when she

3

reached for the bathroom door, Camacho punched her in the eye again. She screamed, and he put his hand over her mouth and turned on a faucet. Camacho then turned on the shower saying he wanted her to clean up, but she refused out of fear of being hit and slipping. She reached for the door a couple more times, and each time Camacho hit her. After she moved away from the door and sat down on the floor, he hit her three times on the forehead. She then got up, sat on the sink, and asked him to call her mother. He agreed and stepped away from the door to make the call.

At that point, she made a break for it, got out of the bathroom and to the front door before Camacho caught up with her. When she went to open the door, Camacho slammed it shut and hit her again in the face with his fist. She said he hit her a couple more times after that and tried to sick his Rottweiler on her. She said she was standing there crying when he pulled back and she managed to get the door open and run away.

Later the same day, she got a notification Camacho had posted a picture of her, but when she clicked on it, the image had been deleted. That night, she learned he had published nude pictures of her without her permission, sending them to friends and family and posting them on a social media site.

Camacho pled guilty to unlawfully inflicting corporal injury (Pen. Code, § 273.5, subd. (a), unlabeled statutory citations refer to this code) with a great bodily injury enhancement (§ 12022.7, subd. (e)), kidnapping (§ 207, subd. (a)), robbery (§ 211), false imprisonment (§ 236), and unlawfully photographing and publishing private pictures of another person's intimate body parts (§ 647, subd. (j)(4)).

4

On September 17, 2018, the trial court sentenced Camacho to seven years in state prison and ordered him to pay an assortment of fines and fees. The court designated the inflicting corporal injury conviction as the principal count, imposed the middle term of three years with four additional years for the great bodily injury enhancement. The court imposed concurrent middle term sentences for the other offenses—five years for the kidnapping, four years for the robbery, two years for the false imprisonment, and 90 days for publishing private nude pictures of another without permission.

The trial court imposed a court facilities fee of $150 (Gov. Code, § 70373), a $200 court operations fee (Pen. Code, § 1465.8), a $300 restitution fine (Pen. Code, § 1202.4, subd. (b)), and a parole revocation fine of $300 (Pen. Code, § 1202.45, subd. (c)), which it stayed pending successful completion of parole. Though not at issue on appeal, the court also imposed victim restitution of $860. (Pen. Code, § 1202.4, subd. (f)). Camacho didn't object to any of the fee or fine orders at his sentencing hearing.

## II

## ANALYSIS

A. *Certificate of Probable Cause*

Camacho appeals aspects of his sentence, not his guilty plea. The People argue we shouldn't reach the merits because he didn't obtain a certificate of probable cause to challenge his plea agreement, a fact Camacho acknowledges.

In general, defendants may not appeal from a guilty plea unless they first obtain a certificate of probable cause from the trial court attesting there are reasonable grounds for the appeal. (Pen. Code, § 1237.5.) The certificate requirement doesn't apply to appeals which are based solely on grounds arising after the entry of the plea and don't affect the plea's validity. (Cal. Rules of Court, rule 8.304(b)(4)(B).)

The People acknowledge a certificate of probable cause isn't generally required to challenge sentencing issues left open at the time the plea was entered into, even when the plea specifies a range of sentences from which the court could choose. (*People v. Buttram* (2003) 30 Cal.4th 773, 783-785, 790-791.) However, they argue the general rule doesn't apply here because Camacho accepted a plea that incorporated a waiver of such sentencing issues by saying "[a]s part of this plea, I . . . do . . . waive *any right to appeal that I may have*." (Italics added.) According to the People, that means Camacho's appeal—though limited to sentencing issues—is in fact attacking the validity of his plea.

We reject this argument. A plea's general or nonspecific waiver of appellate rights doesn't ordinarily include errors occurring after the plea is entered because the defendant could not have knowingly and intelligently given up the right to appeal unknown or unforeseen future error. (*People v. Becerra* (2019) 32 Cal.App.5th 178, 186-187.) Two examples of general or nonspecific waivers provided by the Supreme Court are, "'I waive my appeal rights,'" and "'I waive my right to appeal any ruling in this case.'" (*People v. Panizzon* (1996) 13 Cal.4th 68, 85, fn. 11.)

The appellate waiver in this case is nonspecific in just that way. Camacho's plea simply said he waived "any right to appeal that I may have." Such a waiver doesn't encompass the sentencing issues of custody term, fees, and fines, which were left unresolved in the plea and were instead determined at the subsequent sentencing hearing. (*People v. Buttram*, *supra*, 30 Cal.4th at pp. 785-786, 790-791.) A certificate of probable cause was not required for us to address those issues. (*Id*. at p. 787.)

B. *Staying Sentences under Section 654*

The trial court ordered the sentences imposed for three of Camacho's crimes—robbery, kidnapping, and false imprisonment—to run concurrently with the sentence for the enhanced infliction of corporal injury. Camacho argues the court should have instead stayed the sentences for the three crimes because they were all committed during a continuous course of conduct and with the single objective of inflicting corporal injury on his girlfriend.

1. *Legal principles*

Under section 654, "[a]n act or omission that is punishable in different ways by different provisions of law shall be punished under the provision that provides for the longest potential term of imprisonment, but in no case shall the act or omission be punished under more than one provision." The statute precludes multiple punishments for a single act, but also for an indivisible course of conduct. (*People v. Hester* (2000) 22 Cal.4th 290, 294.)

"Whether a course of criminal conduct is divisible and therefore gives rise to more than one act within the meaning of section 654 depends on the *intent and objective* of the actor. If all of the offenses were incident to one objective, the defendant may be punished for any one of such offenses but not for more than one." (*People v. Latimer* (1993) 5 Cal.4th 1203, 1208, quoting *Neal v. State of California* (1960) 55 Cal.2d 11, 19.) If a defendant entertains multiple, independent criminal objectives, section 654 doesn't bar punishment for each offense, even if the violations share common acts or are parts of the same course of conduct. (*Ibid.*)

"The question whether [Penal Code] section 654 is factually applicable to a given series of offenses is for the trial court, and the law gives the trial court broad latitude in making this determination. Its findings on this question must be upheld on appeal if there is any substantial evidence to support them." (*People v. Hutchins* (2001) 90 Cal.App.4th 1308, 1312.) "The court's findings may be either express or implied from the court's ruling. [Citation.] In the absence of any reference to Penal Code section 654 during sentencing, the fact that the court did not stay the sentence on any count is generally deemed to reflect an implicit determination that each crime had a separate objective. [Citations.] '"We must 'view the evidence in a light most favorable to the respondent and presume in support of the [sentencing] order the existence of every fact the trier could reasonably deduce from the evidence.'"'" (*People v. Tarris* (2009) 180 Cal.App.4th 612, 626.)

Here, the court did not mention section 654 in sentencing Camacho, so we look to whether substantial evidence supports the implicit finding that he had separate objectives in committing the separate offenses.

### 2. *The robbery offense*

Camacho argues the sentence for robbery should be stayed because he took and destroyed his girlfriend's cell phone to cut her off from the outside world, allowing him to commit the other crimes of kidnapping, false imprisonment, and inflicting corporal injury.

We can't reach that conclusion. When Camacho took possession of the phone and smashed it, he didn't know his girlfriend had been unfaithful. All she had told him was she had done something that he would not forgive her for. It is reasonable to infer he took the phone to try to discover what she was withholding from him and then smashed the phone when his efforts were unsuccessful. The inference finds further support in the fact that the girlfriend's mother was already on her way when he destroyed the phone and went back inside the house. It was only after he returned to the kitchen and Camacho started questioning her that he found out what she had done. And it was only after they agreed to talk some more, called the girlfriend's mother to tell her not to come, and the girlfriend apologized for her infidelity, that Camacho punched her in the eye. We conclude the trial court's implicit finding that the robbery was distinct from the assault had substantial support.

9

### 3. *The kidnapping and false imprisonment offenses*

Camacho claims the sentences imposed for kidnapping and false imprisonment should be stayed because his acts of taking his girlfriend down the hallway into the bathroom (the kidnapping) and stopping her from leaving (the false imprisonment) were done for the purpose of allowing him to inflict further corporal injury.

That just doesn't fit the facts. After he hit her in the kitchen, she began screaming and wouldn't stop. After covering her mouth and nose and asking her to stop didn't work, Camacho told her she needed to get cleaned up, wrapped his arms around her, and led her down a hallway to a bathroom with no window. Once there, he made it clear his desire was to cover up his crime by telling her he wanted her to stay in his house until she healed. The trial court could reasonably have found Camacho committed the act of kidnapping for the purpose of keeping his physical abuse secret, not to impose further harm.

Nor did Camacho's imprisonment of the girlfriend appear to relate to the desire to assault her further. He turned on the shower and encouraged her to clean up, but she refused to get in. When she told him she wanted to go home, he apologized and pleaded with her to stay and wait in his room for her injuries to heal. They spent some of the time in the bathroom talking. He appears to have hit her to stop her from trying to leave. The trial court plainly had sufficient evidence to conclude the initial assault and the false imprisonment were distinct acts. It also had sufficient evidence to conclude the subsequent assaults and the false imprisonment were distinct.

10

In his reply brief, Camacho argues we should order a stay of the false imprisonment sentence because it was part of the same course of conduct as the kidnapping. He doesn't explain why he didn't raise the issue in his opening brief. We don't consider arguments raised first in reply briefs without a showing why the appellant couldn't have made the argument earlier. (*People v. Taylor* (2019) 43 Cal.App.5th 390, 400, fn. 4.) We note, however, even if taking the girlfriend to the bathroom and keeping her there was a single course of conduct, Camacho's separate action in preventing her from opening the front door and leaving was an act of false imprisonment that occurred a substantial amount of time after the kidnapping, which supports the trial court's implicit finding that they were separate acts.

C. *Camacho's Ability to Pay Fines and Fees*

Camacho's sentence includes a court facilities fee in the amount of $150, a $200 court operations fee, a $300 restitution fine, and a stayed parole revocation fine. Camacho didn't object to any of the fee or fine orders at his sentencing hearing.

He argues the trial court violated his constitutional right to due process, as explained in *Dueñas*, by imposing the court operations and facilities fees without first conducting a hearing to determine his ability to pay. Though sections 1202.4 and 1202.45 require trial courts to impose restitution and parole fines, he argues the court was required to stay those fines unless the People demonstrate he is able to pay them.

In *Dueñas*, Division Seven of the Second District Court of Appeal held trial courts must always consider a defendant's ability to pay fees and restitution fines, even if the

statutes imposing them suggest otherwise. (*Dueñas*, *supra*, 30 Cal.App.5th at pp. 1168-1172.) The court held imposing court operation and facilities fees without first determining a defendant's ability to pay them is a due process violation under the federal and state Constitutions. (*Id.* at pp. 1168-1169.) It also held due process requires the execution of a mandatory restitution fine be stayed until and unless the court finds defendant has the ability to pay it. (*Id.* at pp. 1169-1172.) In *People v. Belloso*, the same court included the probation revocation fine authorized by section 1202.45 in its decision to remand that case for an ability to pay hearing.[1] (*People v. Belloso* (2019) 42 Cal.App.5th 647, 651-652, 663.)

The People argue Camacho forfeited his due process claims by failing to object when the court imposed them. We disagree. It would have been futile for Camacho to object to the fines and fees at his sentencing hearing, which occurred before *Dueñas* was published. Moreover, as we explained at length in *People v. Jones* (2019) 36 Cal.App.5th 1028, 1034-1035 (*Jones*), such due process objections were all but foreclosed by the case law and the statutes authorizing the fines and fees. In *Jones*, we therefore declined to find forfeiture on an alleged *Dueñas* error. (*Jones*, at p. 1033; see also *People v. Castellano* (2019) 33 Cal.App.5th 485, 489; *People v. Johnson* (2019) 35 Cal.App.5th 134, 137-138;

---

[1] These and related issues are pending before the Supreme Court in *People v. Kopp* (2019) 38 Cal.App.5th 47, review granted November 13, 2019, S257844.

contra, *People v. Frandsen* (2019) 33 Cal.App.5th 1126, 1153.) We see no reason to depart from our prior holding.**2**

However, we conclude any error stemming from the failure to conduct an ability-to-pay hearing was harmless beyond a reasonable doubt. (*Jones*, *supra*, 36 Cal.App.5th at pp. 1034-1035 [error under *Dueñas* is subject to a harmless error analysis]; see *Chapman v. California* (1967) 386 U.S. 18, 24 [before a court can find a constitutional error harmless, it must be able "to declare a belief that it was harmless beyond a reasonable doubt"].)

The trial court imposed fines and fees in the total amount of $650 and sentenced Camacho to seven years in state prison, reduced by 152 days of credit for time served. Had the court conducted an ability-to-pay hearing in accordance with *Dueñas*, it would have considered Camacho's future earning capacity, including whether he would be able to earn wages in prison. (*Jones, supra,* 36 Cal.App.5th at p. 1035; *People v. Johnson, supra,* 35 Cal.App.5th at pp. 138-139.)

Every able-bodied person committed to the custody of the Department of Corrections and Rehabilitation is obligated to work. (Cal. Code Regs., tit. 15, § 3040, subd. (a).) As we explained in *Jones*, wages in California prisons currently range from $12 to $56 a month. (*Jones*, *supra*, 36 Cal.App.5th at p. 1035; Cal. Code Regs., tit. 15,

---

**2** The dissent's reliance on *People v. Valles* (2020) 49 Cal.App.5th 156, 162-163, review granted, July 22, 2020, S262757, is misplaced, as the lead opinion in that case expressed only one justice's opinion on the forfeiture of *Dueñas* claims. (*Valles*, at p. 169, conc. opn. of Menetrez J. ["Presiding Justice Ramirez['s] . . . *Dueñas* analysis . . . is not joined by any other member of the panel and conflicts with this division's published precedent in *People v. Jones*"].) He remains alone in his view.

§ 3041.2, subd. (a)(1).) Camacho was 19 years old and a high school graduate when he was sentenced. He has pointed to nothing in the record to suggest he isn't able-bodied. Letters written in his support by his high school principal and his science teacher suggest he is intelligent and willing to work hard, which bodes well for his ability to maintain paid employment while in prison. Accordingly, we conclude the failure to conduct a hearing to determine Camacho's ability to pay $650 in fines and fees was harmless beyond a reasonable doubt.

## III

## DISPOSITION

We affirm the judgment.

NOT TO BE PUBLISHED IN OFFICIAL REPORTS

SLOUGH        
              J.

I concur:

MENETREZ      
       J.

[*People v. Camacho*, E071514]

RAMIREZ, P.J., Concurring and Dissenting.

I concur with the majority in all respects except for its conclusion that defendant did not forfeit the issue of his ability to pay the fines.  For the reasons expressed in *People v. Valles* (2020) 49 Cal.App.5th 156, 162-163, review granted, July 22, 2020, S262757, I would find defendant is precluded from challenging the trial court's imposition of the statutory minimum restitution and parole revocation fines because he did not object to them at the sentencing hearing.

RAMIREZ_____
P. J.