Filed 3/24/26  P. v. Juarez CA4/1

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA

| | |
|---|---|
| THE PEOPLE, | D084896 |
| Plaintiff and Respondent, | |
| v. | (Super. Ct. No. SCD296298) |
| ORLANDO HERNANDEZ JUAREZ, | |
| Defendant and Appellant. | |

APPEAL from a judgment of the Superior Court of San Diego County, Jeffrey F. Fraser, Judge.  Remanded with directions and affirmed in all other respects.

Kevin Smith, under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Lance E. Winters and Charles C. Ragland, Chief Assistant Attorneys General, Robin Urbanski, Acting Assistant Attorney General, A. Natasha Cortina and Alan L. Amann, Deputy Attorneys General, for Plaintiff and Respondent.

Orlando Hernandez Juarez appeals aspects of the sentence imposed for his convictions for forcible rape (Pen. Code, § 261, subd. (a)(2); count 1);

corporal injury to a person with whom he was in a dating relationship
(§ 273.5(a); count 2); false imprisonment by violence or menace (§ 236/237(a);
count 3); and attempting to dissuade a witness from reporting a crime
(§ 136.1(b)(1); count 4). For count 2, the jury also found true that, in the
commission of the offense, Juarez personally inflicted great bodily injury on
the victim under circumstances involving domestic violence.[1] (§ 12022.7(e).)

Juarez argues execution of his sentence for false imprisonment should
have been stayed under Penal Code section 654(a) because it arose from the
same "single course of conduct" as the other counts. We conclude the court's
comments at the original sentencing—which suggested section 654 applied to
the false imprisonment count—warrant remanding for clarification rather
than construing the court's later silence at resentencing as an implied finding
to the contrary.

In addition, the parties agree (1) the presentence custody credits
awarded shorted Juarez one day of actual custody credit and (2) the trial
court should have calculated the time in custody between Juarez's original
sentencing and his resentencing. We agree, so we remand for the trial court
to correct the presentence custody credits and to calculate the custody credits
between the original sentencing and resentencing.

We therefore remand with directions for the trial court to clarify
whether section 654 applies to count 3 (false imprisonment) and to amend
and calculate custody credits consistent with this opinion.

---

[1] In an earlier appeal, we affirmed the jury's great bodily injury finding
as supported by substantial evidence. (*People v. Juarez* (Jan. 13, 2025,
D082954) [nonpub. opn.].) We granted Juarez's unopposed requests for
judicial notice of the briefing, our opinion, and the record in that matter.

I.

A.

At trial, Lilia T. testified she brought her car over to Juarez's residence one evening so he could change its oil. The pair had been dating for a few months.

When Lilia heard a commotion nearby and asked Juarez about it, he responded it was none of her business, told her to "get inside," and "started pushing" her. Juarez first pushed Lilia inside the kitchen. As they reached the hallway, he pulled or pushed Lilia's hand so hard he fractured her pinky finger. When they got "right in front" of Juarez's bedroom, he punched her hard in the face "several" times. Juarez then pushed Lilia into his bedroom, locked the door, and told Lilia she "was not going to be able to leave."

While Juarez stood blocking the bedroom door, he spoke on the phone "to women, to his family." During this time, Lilia sent text messages to a friend asking him to "'[p]lease call 911.'" She also called 911, but Juarez "snatched the phone away" and "turned it off."

After taking away the phone, Juarez strangled Lilia until she could not breathe. Juarez bit her breasts and her leg. He ripped off Lilia's clothes and had sex with her despite her protest.

At some unspecified point, Juarez threatened Lilia and her family, saying he would "send someone to kill all of them."

Only after Juarez fell asleep could Lilia escape, at which point she "left running."

B.

The trial court originally sentenced Juarez to a total prison term of 23 years. At the sentencing hearing, the court said it would "[im]pose and stay" the middle-term sentence for count 3 (false imprisonment) "primarily

3

based on the fact that all of these facts are essentially running together."
"[B]ased on the facts," the court explained "there's some overlap with [the] other counts," as it viewed the false imprisonment as being "kind of encapsulated in" the rape, witness intimidation, and "domestic violence [count 2 (corporal injury)] with the broken finger." Yet when the courtroom clerk asked whether count 3 was "stayed or concurrent," the court responded, "[i]t would be concurrent for your purposes." Consequently, the abstract of judgment indicated an unstayed concurrent sentence for count 3.

A few months later, the court recalled the sentence because it believed Juarez "was given too much time . . . based on the particular facts of this case."

At the resentencing hearing, the court imposed a total prison term of 18 years and four months. For count 3, the court imposed one-third the middle term, doubled because of a prior strike, for a consecutive sentence of 16 months. No one raised section 654 or the court's previous comments about count 3's "overlap with [the] other counts." The court left custody credits to "be determined by the Department of Corrections" and Rehabilitation.

## II.

### A.

Juarez argues the sentence for count 3 (false imprisonment) must be stayed under section 654 "as arising from the same course of conduct as several of the other offenses" with "no objective apart from facilitating the sex and corporal injury offenses." The People counter that the record supports the court's "implicit determination that the false imprisonment was divisible from the other offenses." But if we decide the court's comments at the original sentencing "create ambiguity on this score," the People seek a remand for the trial court to "clarify its findings with respect to the

4

section 654 determination." On this record, we conclude remanding for clarification is appropriate.

Section 654's applicability is reviewable on appeal even if, as here, the issue was not raised with the trial court. (*People v. Scott* (1994) 9 Cal.4th 331, 354, fn. 17.)

Section 654(a) protects against multiple punishment where the crimes arise from either (1) the same act or omission or (2) an indivisible course of conduct united by a single intent and objective. (*People v. Harrison* (1989) 48 Cal.3d 321, 335.) "In the absence of any reference to Penal Code section 654 during sentencing, the fact that the court did not stay the sentence on any count is generally deemed to reflect an implicit determination that each crime had a separate objective" subject to substantial evidence review. (*People v. Tarris* (2009) 180 Cal.App.4th 612, 626.)

Juarez contends "this case is not governed by the normal presumption" the trial court implicitly found no indivisible course of conduct because the "only comments" the court made on this topic at the original sentencing hearing were to the contrary. The People concede the court "made comments suggesting" a section 654 stay applied to the false imprisonment term at the original sentencing but argue its silence at resentencing reflects "an implicit determination of distinct objectives." It is possible that by resentencing the trial court, upon reflection, changed its mind about the factual "overlap" between the false imprisonment and the "other counts." Yet we hesitate to draw that implied finding from silence when, over the course of sentencing, the court expressly found the opposite: that "all of these facts are essentially running together." Instead, we agree with the People that "the best course of action" is to remand for the trial court to "clarify its findings pertaining to

section 654." Juarez deems remand unnecessary based on his view that the record "conclusively establish[es] that the false imprisonment was merely a means to the end of accomplishing the other offenses." But where, as here, an aspect of sentencing is unclear, "[i]t appears appropriate under these circumstances to remand the matter to permit the trial court to clarify." (*People v. Garcia* (1997) 59 Cal.App.4th 834, 839.)

B.

Juarez contends—and the People concede—the abstract of judgment requires two corrections related to custody credits. We agree.

First, Juarez is entitled to one additional day of presentence custody credit. Presentence custody credits include the day of arrest through the day of sentencing. (*People v. Kennedy* (2012) 209 Cal.App.4th 385, 394.) The trial court awarded 387 actual days of presentence custody credit. Including the day of arrest (September 24, 2022) and the day of original sentencing (October 16, 2023), however, it should have awarded 388 actual days. When combined with the 58 days of conduct credit under section 2933.1, it results in a total of 446 days of presentence custody credits. The abstract of judgment must be amended to reflect this corrected total.

Second, the trial court must calculate the credits for time served between Juarez's original sentencing and his July 23, 2024 resentencing. When being resentenced, a defendant shall be credited for time served on the later-modified sentence. (§ 2900.1.) At resentencing, it is the trial court's duty to determine the total number of days to be credited. (§ 2900.5(d).) So "when a prison term already in progress is modified . . . , the sentencing court must recalculate and credit against the modified sentence *all actual time* the defendant has already served." (*People v. Buckhalter* (2001) 26 Cal.4th 20, 29.)

6

At resentencing here, the trial court left determining custody credits to the CDCR. Juarez asks us to make that modification ourselves. Although we have authority to make the modification under section 1260, we decline to do so because we are already remanding to the trial court to address other aspects of this appeal. We thus remand to the trial court with directions to calculate Juarez's custody credits from his original sentencing up to his July 23, 2024 resentencing.

III.

We remand to the trial court with directions to clarify its section 654 findings for count 3 (false imprisonment). If the trial court clarifies on remand that section 654 applies, we direct it to modify the judgment to stay the sentence for count 3 and amend the abstract of judgment accordingly.

We also remand to the trial court with directions to (1) modify the presentence custody credits to reflect 388 actual days and thus a total of 446 days of presentence custody credits and (2) calculate Juarez's custody credits from his original sentencing up to his July 23, 2024 resentencing.

The court shall forward a certified copy of the amended abstract of judgment to the Department of Corrections and Rehabilitation. In all other respects, we affirm the judgment.

CASTILLO, J.

WE CONCUR:

DO, Acting P. J.

KELETY, J.

7