Filed 9/5/13  P. v. Guzman CA4/2

## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FOURTH APPELLATE DISTRICT

## DIVISION TWO

| | |
|---|---|
| THE PEOPLE, | |
| Plaintiff and Respondent, | E050850 |
| v. | (Super.Ct.No. RIF143965) |
| JAIRO FIDEL GUZMAN, | OPINION |
| Defendant and Appellant. | |

APPEAL from the Superior Court of Riverside County.  J. Thompson Hanks, Judge.  Affirmed in part as modified; reversed in part.

Dacia A. Burz, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Dane R. Gillette, Chief Assistant Attorney General, Gary W. Schons, Assistant Attorney General, Barry Carlton, Felicity Senoski and Meredith S. White, Deputy Attorneys General, for Plaintiff and Respondent.

1

A jury convicted defendant Jairo Fidel Guzman of vehicle burglary (count 1—Pen. Code, § 459),[1] receiving stolen property (count 2—§ 496, subd. (a)), felon in possession of a firearm (count 4—§ 12021, subd. (a)(1)), and active participation in a criminal street gang (count 6—§ 186.22, subd. (a)). The trial court found true allegations that defendant had suffered two prior strike convictions. (§§ 667, subds. (c) & (e), 1170.12, subd. (c)(2)(A).) Prior to sentencing, the court denied defendant's *Romero*[2] motion to strike his prior strike convictions. The court sentenced defendant to an aggregate term of 75 years to life consisting of the following: 25 years to life on count 1; 25 years to life on count 2, stayed pursuant to section 654; a consecutive 25 years to life on count 4; and a consecutive 25 years to life on count 6.

On appeal, defendant raises three arguments: (1) insufficient evidence supports defendant's conviction for active participation in a criminal street gang because the People failed to adduce evidence defendant promoted, furthered, or assisted felonious conduct by members of his gang; (2) the court erred in neglecting to stay the sentence on count 4 pursuant to section 654; and (3) the court erred in denying defendant's *Romero* motion because it failed to consider any admissible evidence of the circumstances of defendant's prior strike conviction behavior that, he asserts, constituted one course of indivisible conduct. We agree that the court erred in neglecting to stay the sentence on count 4; we, therefore, modify defendant's sentence to reflect the sentence on count 4 is

---

[1]  All further statutory references are to the Penal Code unless otherwise indicated.

[2]  *People v. Superior Court* (*Romero*) (1996) 13 Cal.4th 497 (*Romero*).

stayed.  In light of the California Supreme Court's decision in *People v. Rodriguez* (2012) 55 Cal.4th 1125 (*Rodriguez*), we reverse defendant's conviction on count 6.  In all other respects, we affirm the judgment.

## FACTUAL AND PROCEDURAL HISTORY

On May 18, 2008, between 7:00 and 7:20 a.m., Lauree sat outside her home, which abuts the trail access to Mount Rubidoux in the City of Riverside.  She heard a vehicle with a very loud diesel engine coming up the street.  From her yard she could see the vehicle was a large, white, full-sized truck with a black construction rack and a broken taillight.  She saw the vehicle drive up her street, then heard it turn around and drive back the way it came.  She identified defendant as the driver of the truck.

Lauree then heard, in succession, the vehicle park, its door open, the sound of shattering glass, an automobile alarm go off, the vehicle start back up, and drive off.  She saw the vehicle again as it drove away.  Lauree called the police; she then went out her door where she saw a green van with a broken window.  At trial, Lauree identified pictures of defendant's father's vehicle as the truck she saw on May 18.

Jolanda testified she had parked her van near Mount Rubidoux, rolled up her windows, locked her doors, and left for her daily walk.  When she returned from her walk, her van had been broken into; one of her windows was broken and her purse had been stolen.

On May 22, 2008, between 12:00 and 12:30 p.m., Jeff was in his driveway; he saw a white truck with a loud diesel motor and a black construction rack driving up the street.  Jeff wrote down the truck's license plate number.  Defendant was the driver of the

vehicle. Jeff called the police and provided them with a description of the vehicle and the license plate number.

Riverside Police Detective Kevin Townsend, was assigned to investigate the May 18, 2008, vehicle burglary. He spoke with both Jeff and Lauree; the former gave him the license plate number of the truck. Detective Townsend accessed a DMV database; it revealed that "Fidel Guzman," residing at an address in the City of Riverside, was the registered owner of the vehicle. Fidel Guzman was defendant's father. Detective Townsend monitored the residence over the next four or five days. On May 27, 2009, he witnessed defendant driving the truck. Detective Townsend called for a marked police vehicle and together they conducted a traffic stop of defendant.

Detective Townsend then returned to the residence to conduct a search with other officers. In one room he found pictures of defendant; men's clothing; mail in defendant's name; East Side Riva (ESR) gang graffiti, including defendant's gang moniker "Frost"; a civil gang injunction with defendant's name on it; gang tattoo stencils; and a loaded .38-caliber revolver. The handgun's serial number had been secreted under paint. Detective Townsend also found Jolanda's purse in the trashcan in the driveway outside defendant's house; the purse still contained a number of Jolanda's credit cards. Additionally, Detective Townsend noticed a motorcycle in the backyard; he took a picture of its VIN. When Detective Townsend entered the VIN number it into a database it came back as stolen. Riverside Police Officer Aurelio Melendrez assisted Detective Townsend in the search of the residence. In the same room, Officer Melendrez also found mail with defendant's name on it, photographs of defendant, a newspaper article regarding a gang

4

injunction against ESR that was marked with numerous items of gang graffiti, and a marking for the number "13," an insignia used by the Mexican Mafia.

The People charged defendant by information with vehicle burglary (count 1— § 459), receiving stolen property (the purse) (count 2—§ 496, subd. (a)), receiving stolen property (the motorcycle) (count 3—§ 496, subd. (d)), felon in possession of a firearm (count 4—§ 12021, subd. (a)(1)) with an attached gang enhancement (§ 186.22, subd. (b)), obliteration of the firearm's serial number (count 5—§ 12090), and active participation in a criminal street gang (count 6—§ 186.22, subd. (a)). Prior to trial, defendant moved pursuant to section 995 to strike count 5 and the gang enhancement attached to count 4. The court granted the motion.

At trial, Detective Brian Smith of the Riverside Police Department's gang intelligence unit testified as the People's expert gang witness. Defendant's residence was in ESR territory. Defendant's first contact with the gang task force was in April 2001, when defendant was photographed with 23 ESR members throwing ESR hand signs. Defendant was contacted in June 2004, in relation to a robbery committed by three ESR members. Defendant admitted being a member of "Clique Los Primos" (CLPS), a sub-group of ESR, and that his gang moniker was "Frost."

In August 2006, defendant registered with law enforcement as a member of ESR. He again admitted being a member of CLPS, with the moniker "Frost." There were no tattoos noted on defendant at that time. In February 2005, defendant pled guilty to the crime of assault with a deadly weapon while causing great bodily injury; he admitted that the offense was committed for the benefit of or in association with ESR; he also admitted

5

being an active participant in ESR. Defendant again registered as a member of CLPS on January 15, 2008, with the moniker "Frost." At that time, defendant was noted to have tattoos reading "CLPS" and "ESR" on his chest, "'Park,'" and "'Avenue'" on his triceps. "Park Avenue" is another subset of ESR. Papers found in defendant's room after the search of his residence contained numerous ESR gang-related graffiti. Defendant was one of the original 114 people listed on the civil gang injunction entered against ESR. Since his incarceration, defendant had received a list of rules endorsed by the Mexican Mafia, which were only dispersed to active gang members. Detective Smith opined that defendant was an active member of ESR in May 2008.

After the People rested, defendant moved to dismiss all counts pursuant to section 1118.1. The trial court granted defendant's motion as to count 3, but denied it as to the remaining counts.

## DISCUSSION

A. <u>INSUFFICIENCY OF THE EVIDENCE TO SUPPORT CONVICTION FOR THE SUBSTANTIVE GANG OFFENSE IN COUNT 6</u>

We rendered our initial opinion in this matter on January 4, 2012. On May 15, 2013, the parties filed a stipulation to recall the remittitur in view of the California Supreme Court's denial of defendant's petition for review on March 21, 2012, "without prejudice to any relief to which defendant may be entitled after this court decides *People v. Rodriguez*, S187680." The California Supreme Court rendered its decision in *Rodriguez* on December 27, 2012. On June 25, 2013, we issued an order recalling the remittitur, vacating our original opinion, and reinstating the appeal for the limited

6

purpose of issuing a new opinion on the issue of the sufficiency of the evidence of defendant's conviction for active participation in a criminal street gang in light of *Rodriguez.*

Defendant contended that in order for a defendant to be convicted of active participation in a criminal street gang, the People must prove the defendant committed a separate felony offense with *other members of his gang.* In other words, although defendant may be the primary perpetrator of the offense, unless it is committed with other members of his gang, a conviction for active participation in a criminal street gang cannot be sustained. Thus, because the People failed to adduce any evidence that defendant committed any of the underlying offenses with members of his gang, his conviction on count 6 must be reversed. The People originally argued, to the contrary, that any felonious conduct committed by an active gang member constitutes active participation in a criminal street gang, regardless of whether other gang members participate in the underlying crimes. In our original opinion, we held that the primary perpetrator of a crime may be found criminally liable for active participation in a criminal street gang whether or not he is accompanied by fellow gang members during the commission of the underlying offenses.

"'In reviewing a challenge to the sufficiency of the evidence, we do not determine the facts ourselves. Rather, we "examine the whole record in the light most favorable to the judgment to determine whether it discloses substantial evidence—evidence that is reasonable, credible and of solid value—such that a reasonable trier of fact could find the defendant guilty beyond a reasonable doubt." [Citations.] We presume in support of the

7

judgment the existence of every fact the trier could reasonably deduce from the evidence. [Citation.] [¶] The same standard of review applies to cases in which the prosecution relies primarily on circumstantial evidence and to special circumstance allegations. [Citation.] "[I]f the circumstances reasonably justify the jury's findings, the judgment may not be reversed simply because the circumstances might also reasonably be reconciled with a contrary finding." [Citation.] We do not reweigh evidence or reevaluate a witness's credibility.' [Citation.]" (*People v. Houston* (2012) 54 Cal.4th 1186, 1215.)

Section 186.22, subdivision (a) reads: "Any person who actively participates in any criminal street gang with knowledge that its members engage in or have engaged in a pattern of criminal gang activity, and who willfully promotes, furthers, or assists in any felonious criminal conduct by members of that gang . . . ." In *Rodriguez*, *supra*, 55 Cal.4th 1125, the California Supreme Court held that "section 186.22(a) reflects the Legislature's carefully structured endeavor to punish active participants for commission of criminal acts done *collectively* with gang members." (*Id*. at p. 1139.) Thus, the court concluded that a gang member who commits an offense alone, whether gang related or not, is not in violation of section 186.22, subdivision (a). (*Ibid*.)

Here, there was no evidence defendant committed any of his offenses collectively with any other gang member. Thus, *Rodriguez* compels the reversal of defendant's conviction for active gang participation in count 2.

8

B.    SECTION 654

Defendant contends his sentence for active participation in a criminal street gang should be stayed because the underlying felonies supporting the conviction are the same felonies that constituted the other counts in this case.  (§ 654.)  We agree.

Section 654, subdivision (a), provides:  "An act or omission that is punishable in different ways by different provisions of law shall be punished under the provision that provides for the longest potential term of imprisonment, but in no case shall the act or omission be punished under more than one provision."  Our Supreme Court has "broadly" construed section 654.  (*People v. Rodriguez* (2009) 47 Cal.4th 501, 507.)  Our high court has concluded section 654 applies "not only where there was but one 'act' in the ordinary sense . . . but also where a course of conduct violated more than one statute and the problem was whether [the course of conduct] comprised a divisible transaction which could be punished under more than one statute within the meaning of section 654." [Citation.]  [¶]  Whether *a course of criminal conduct* is divisible and therefore gives rise to more than one act within the meaning of section 654 depends on the *intent and objective* of the actor.  If all of the offenses were incident to one objective, the defendant may be punished for any one of such offenses but not for more than one.'  [Citation.]" (*Rodriguez*, at p. 507.)  A trial court's finding that section 654 is applicable will be upheld on appeal if it is supported by substantial evidence.  (*People v. Tarris* (2009) 180 Cal.App.4th 612, 626 [Fourth Dist., Div. Two].)

9

The "course of conduct" in the instant case is defendant's burglary of Jolanda's vehicle and/or defendant's possession of a firearm.[3] Defendant's conviction for count 1 accounted for the burglary of Jolanda's vehicle. Defendant's conviction on count 2 addressed the possession of Jolanda's stolen purse. Defendant's conviction for count 4 accounted for his prohibited possession of a firearm due to his status as a felon. Based upon these convictions, defendant's "course of conduct" has already been divided into two individual acts. There is not a third act in the course of conduct for us to analyze whether defendant harbored a separate or simultaneous intent. Rather, the active participation offense is based on the same acts that comprised the convictions for counts 1, 2, and/or 4. Therefore, presumably, section 654 should result in a stay of sentence on count 6. However, the issue of whether defendant's active participation sentence should be stayed is not so easily resolved.

Our Supreme Court is currently considering the issue of whether section 654 applies when a defendant has been given a sentence for (1) active participation in a street gang (§ 186.22, subd. (a)), and (2) a separate sentence for the crime used to prove the underlying felony element in the active participation offense. (*People v. Mesa* (2010) 186 Cal.App.4th 773, review granted Oct. 27, 2010, S185688.) The Courts of Appeal are split on the issue.

This court has concluded section 654 bars the imposition of the active participation sentence when a defendant has already been sentenced for the act that

---

[3] The court neither instructed the jury nor did the jury indicate upon which underlying felony or felonies it was relying in rendering a guilty verdict on count 6.

constitutes the underlying felony in the active participation offense. (*Sanchez*, *supra*, 179 Cal.App.4th at p. 1316.) In *Sanchez*, we reasoned that if an offense were used to satisfy the underlying felony element of the active participation offense, then the same act and intent "almost by definition" had to be involved in both crimes. Therefore, we concluded a defendant could not be punished for both active participation and the underlying felony, pursuant to section 654. (*Ibid.*)

Courts "'construe statutes and regulations in a manner that carries out the legislative or regulatory intent. [Citation.] [Courts] must "'ascertain the intent of the [drafters] so as to effectuate the purpose'" of the regulations. [Citation.] The words used are the primary source for identifying the drafter's intent. [Citation.] [Courts] give those words their usual and ordinary meaning where possible. [Citations.] [Courts] give significance to every word, avoiding an interpretation that renders any word surplusage. [Citation.] [Courts] also interpret words of a regulation in context, harmonizing to the extent possible all provisions relating to the same subject matter. [Citation.]' [Citation.]" (*In re Espinoza* (2011) 192 Cal.App.4th 97, 104 [Fourth Dist., Div. Two].)

Section 186.22, subdivision (a), provides: "Any person who actively participates in any criminal street gang with knowledge that its members engage in or have engaged in a pattern of criminal gang activity, and who willfully promotes, furthers, or assists in any felonious criminal conduct by members of that gang, shall be punished by imprisonment in a county jail for a period not to exceed one year, or by imprisonment in the state prison for 16 months, or two or three years."

11

Looking at the plain language of the statute, and giving the words their usual and ordinary meanings, it appears the statute was designed to punish people who actively participate in a gang. Our high court has concluded "that the phrase 'actively participates' needs no further description." (*People v. Albillar* (2010) 51 Cal.4th 47, 58.) However, the Supreme Court explained that "section 186.22(a) imposes criminal liability not for lawful association, but only when a defendant 'actively participates' in a criminal street gang while also aiding and abetting a felony offense committed by the gang's members. [Citation.]" (*Castenada*, *supra*, 23 Cal.4th at pp. 751-752.) Accordingly, the underlying felony is an element of section 186.22, subdivision (a). Therefore, every conviction for section 186.22, subdivision (a), includes the finding that defendant committed an underlying felony.

A problem arises because the underlying felony is chargeable as an independent offense, e.g., robbery or rape. Additionally, if a defendant intended to assist or promote the gang, then that issue can be addressed by the gang enhancement set forth in section 186.22, subdivision (b). As a result, the substantive offense of active participation in a gang is essentially meaningless, because if a defendant committed a felony to benefit a gang, then a prosecutor could simply charge the defendant with the felony and the gang enhancement—there is no need to charge the defendant with the active participation offense because the charges would be practically identical, and therefore, the application of section 654 would render the active participation offense meaningless. For example, the gang enhancement requires the felony be committed "with the specific intent to promote, further, or assist in any criminal conduct by gang members," (§ 186.22, subd.

(b)), while the active participation offense requires that a person "willfully promotes, furthers, or assists in any felonious criminal conduct by members of [the] gang" (§ 186.22, subd. (a)).  Accordingly, if section 654 is applicable to the active participation offense, then the active participation offense is a redundancy in the Penal Code, since it serves no purpose, as a defendant's sentence for the conviction would be stayed by section 654 due to the active participation offense always involving the same act as the underlying felony.[4]

The plain language of the statute has left us with the issue of section 186.22, subdivision (a), appearing redundant or superfluous; therefore, we look to the legislative intent related to the subdivision and statutory scheme.  When enacting the Street Terrorism Enforcement and Prevention Act, our Legislature found "that the State of California is in a state of crisis which has been caused by violent street gangs whose members threaten, terrorize, and commit a multitude of crimes against the peaceful

---

[4] We have considered the possibility the active participation offense could be used if a prosecutor did not want to charge the underlying felony; however, that reasoning also fails, because ultimately the prosecutor will have to prove a felony was committed.  For example, in a case involving an assault, the prosecutor would need to show the assault amounted to a felony, rather than simple assault.  Therefore, the prosecutor still has the burden of proving a felony occurred, meaning it would be logical for the prosecutor to simply charge the felony assault with a gang enhancement (rather than charging active participation), saving the prosecutor from proving the additional element of "active participation."  The active participation offense could also be an attempt to punish criminal activity by a gang member not "committed for the benefit of, at the direction of, or in association with any criminal street gang" as required by section 186.22, subdivision (b).  However, without an express exemption from the dictates of section 654, we cannot discern how a defendant committing such an offense could be deemed to have a separate intent than that held when committing the underlying felony offense; thus, section 654 would appear to bar imposition of sentence on the former whenever a defendant is convicted of both.

13

citizens of their neighborhoods." (§ 186.21.) As a result, the Legislature enacted the Street Terrorism Enforcement and Prevention Act with the intent of "seek[ing] the eradication of criminal activity by street gangs by focusing upon patterns of criminal gang activity and upon the organized nature of street gangs, which together, are the chief source of terror created by street gangs." (§ 186.21.)

There is nothing in the Legislature's declared intent explaining how a conviction for active participation (§ 186.22, subd. (a)) differs from a conviction of the underlying felony with a gang enhancement (§ 186.22, subd. (b)). For example, it is not clear if the active participation offense was meant to result in harsher sentences and therefore work as an exception to section 654; however, if the goal were harsher sentences, then it would seem easier to simply raise the prison term by providing for an associated gang enhancement, i.e., simply enhancing the sentence of any crime committed by any gang member.

In sum, it appears the application of section 654 to the active participation offense will render the provision superfluous because a defendant's sentence for the offense will almost always be stayed pursuant to section 654 due to the underlying felony always comprising the same act as the active participation act. As cited *ante*, we are aware of the rule that we should not interpret a provision to be surplusage; however, we are not aware of any rule that allows a statute to be exempted from the law set forth in section 654 simply because application of section 654 will render the provision surplusage. In other words, the fact the application of section 654 will render this statute superfluous is not a legal reason for exempting the provision from law set forth in section 654.

14

A somewhat related, but alternate, theory we have considered is the possibility that section 186.22, subdivision (a), operates as a specific statute, and therefore trumps section 654, which is a general statute; however, that reasoning also fails. There is a "well-established rule . . . that the Legislature may create an express exception to section 654's general rule against double punishment by stating a specific legislative intent to impose additional punishment. [Citations.]" (*People v. Ramirez* (1995) 33 Cal.App.4th 559, 572-573.) "'A statute which provides that a defendant shall receive a sentence enhancement in addition to any other authorized punishment constitutes an express exception to section 654.'" (*People v. Palacios* (2007) 41 Cal.4th 720, 730.)

We can find no language in the declared legislative intent (§ 186.21), or the provision itself, creating an exemption to the application for section 654. For example, there is no express reference to section 654. (§§ 186.21, 186.22.) Further there is not an implied reference to section 654, such as "notwithstanding any other law" or similar language to the same effect. (See *People v. Palacios*, *supra*, 41 Cal.4th at p. 730 [the phrase "'notwithstanding any other provision of law'" created an exception to the application of section 654].) Since there is nothing in the statute or declared intent specifically creating an exception to section 654, we conclude the active participation provision was not meant to be interpreted as a specific statute that trumps the general rule set forth in section 654.

Since it has been held the active participation offense centers upon felonious conduct, rather than lawful association, it would appear the underlying felony element of the active participation offense will always result in the sentence for active participation

15

being stayed pursuant to section 654, because the same act will inevitability be at issue in the straight felony charge and the active participation charge. As a result, it seems the active participation provision is superfluous. Further, there does not appear to be any legal exemption removing the active participation sentence from the ambit of section 654. As a result, we conclude 654 does act as a bar to the imposition of defendant's sentence for active participation (§ 186.22, subd. (a)). The trial court incorrectly ordered that defendant's sentence for the offense should be served consecutively, when the sentence should have been stayed. Accordingly, we will direct that defendant's active participation sentence be stayed.

C.    *ROMERO* MOTION

Defendant contends the sentencing court abused its discretion in denying his motion to strike one of his two prior strike offenses because the court failed to make a determination, based upon facts with evidentiary value, regarding whether defendant's prior convictions constituted a continuous course of conduct such that they should be treated as one, rather than two, prior strikes. We hold the court acted within its discretion in declining defendant's invitation to strike one of his prior strike convictions.

On April 1, 2010, after defendant's conviction, he filed a *Romero* motion requesting the court strike at least one of his two prior strike convictions. Defendant noted that his prior two strikes were based on a single course of conduct. Defendant cited *People v. Benson* (1998) 18 Cal.4th 24, for the proposition that "there are some circumstances in which two prior felony convictions are so closely connected—for example, when multiple convictions arise out of a single act by the defendant as

16

distinguished from multiple acts committed in an indivisible course of conduct—that a trial court would abuse its discretion under section 1385 if it failed to strike one of the priors." (*Id*. at p. 36, fn. 8.) Moreover, defendant cited *People v. Burgos* (2004) 117 Cal.App.4th 1209, for the proposition "that the failure to strike one of . . . two prior convictions that arose from a single act constitutes an abuse of discretion." (*Id*. at p. 1214, fn. omitted.) Defendant concluded, "[h]ere, [defendant's] two prior convictions were, in the language of *Benson*, 'so closely connected,' having arisen from the same single act, that failure to strike one of them must be deemed an abuse of discretion." (Italics added.) Although the People filed opposition to defendant's motion, they did not address the issue of whether defendant's prior convictions constituted a single course of conduct.

The probation officer's report filed on May 7, 2010, provided "a brief synopsis of the circumstances" of defendant's prior convictions: "On June 12, 2004, officers responded to a 'man with a gun' call in the area of 10th Street and Brockton Avenue, in the City and County of Riverside. A witness called 911 to report three Hispanic males, later identified as [defendant, Michael and Moises] were in a lowered car pointing a handgun at people. Officers in the area located a vehicle matching the description at 14th Street and Brockton Avenue. As they were conducting a felony stop, dispatch broadcasted a robbery had just occurred in the area of 11th Street and Locust Avenue. [¶] While officers detained the defendant[;] another officer contacted the victim[.] He was riding his bicycle on University Avenue, when the vehicle and suspects drove through the parking lot, 'mad dogging' the victim. At that time, [Moises] asked if the victim was

from '1200 Blocc' (an active Black street gang that claims Eastside Riverside). The victim told them he was not in a gang and the suspects challenged him to fight. The victim was struck several times, at one point having an advantage on [Moises]. The defendant and [Michael] then exited the vehicle and surrounded the victim. [Michael] told the victim, he was going to 'dump on him' (meaning he was going to be shot). The victim was able to run away as his bicycle was taken by one of the suspects."

At the sentencing hearing on May 7, 2010, the court noted it had read defendant's motion and the People's opposition It then engaged in the following colloquy with the People:

"[Court]: [W]e also discussed in chambers . . . his prior convictions that constitute the strikes; and if I'm remembering correctly, the defendant, along with some others, robbed the victim of his bicycle, and then the victim got away and went to a place of seeming safety and to discuss the matter with his friend and his friend's mother.

"[Prosecutor]: Yes, Your Honor.

"[Court]: "And the defendant and the others came after him and made threats to him at that time.

"[Prosecutor]: Again, yes. [J]ust to clarify, Your Honor, it wasn't just a robbing of the bicycle, they also beat him at that point.

"[Court]: Okay. But then there was the distance—they separated?

"[Prosecutor]: That's correct.

"[Court]: And then the defendant returned and made threats.

"[Prosecutor]: Correct.

18

"[Court]:  Okay.  All right.  Now as to the Romero motion, . . . it would appear to me that under those circumstances, that . . . the robbery and the threats are not one continuous course of conduct, but rather there's an intermission and a distance that don't take place at the same place or at the same time, albeit, the same victim and the same defendant."

Defense counsel then argued:  "I would say that it is indivisible in the following sense:  That you have the same perpetrators, the same victim close in time, close in space and in terms of distance.  It's not like they came back the next day.  It was during the heat of battle of young and foolish actors who essentially had a continuing course of conduct, and is indivisible in that sense.  It's not like they came back the next day, or the next week, or had different victims."  The court then found:  "[a]s to the Romero motion . . . I do find that . . . the prior offenses occurred at different times and in different places, and for that reason, it does not appear that they are from one continuous act."  Moreover, the court concluded that as to "whether it's in the interest of justice to exercise discretion to strike it, . . . I can't help but be swayed by the fact that he goes to prison and keeps going, gets paroled and keeps going back, because apparently he keeps violating his parole, continues in the gang affiliation.  It does not appear that he is the kind of person that does not fall within the parameters of the three-strikes laws."  The court then denied defendant's motion.

"[A] court's failure to dismiss or strike a prior conviction allegation is subject to review under the deferential abuse of discretion standard."  (*People v. Carmony* (2004) 33 Cal.4th 367, 374.)  Under this standard, defendant bears the burden of establishing an

19

abuse of discretion.  In the absence of such a showing, the trial court is presumed to have acted correctly.  The appellate court may not substitute its judgment for that of the trial court when determining whether the trial court's decision to strike the prior was proper. (*Id.* at pp. 376-377.)  "'[I]n ruling whether to strike or vacate a prior serious and/or violent felony conviction allegation or finding under the Three Strikes law, on its own motion, "in furtherance of justice" pursuant to . . . section 1385[, subdivision] (a), or in reviewing such a ruling, the court in question must consider whether, in light of the nature and circumstances of his present felonies and prior serious and/or violent felony convictions, and the particulars of his background, character, and prospects, the defendant may be deemed outside the scheme's spirit, in whole or in part, and hence should be treated as though he had not previously been convicted of one or more serious and/or violent felonies.' [Citation.]"  (*Id*. at p. 377.)  "'Where the record demonstrates that the trial court balanced the relevant facts and reached an impartial decision in conformity with the spirit of the law, we shall affirm the trial court's ruling, even if we might have ruled differently in the first instance' [citation]."  (*Id*. at p. 378.)

Where a prior court stayed imposition of sentence on one or more prior strike offenses pursuant to section 654, a subsequent court should evaluate that fact when determining whether to strike the prior strike conviction pursuant to *Romero*.  (See *People v. Benson*, *supra*, 18 Cal.4th at p. 36, fn. 8.)  A court may abuse its discretion by declining to strike a prior conviction upon which sentence was stayed pursuant to section 654, when multiple convictions arose from a single act.  (See *Ibid*; *People v. Burgos*, *supra*, 117 Cal.App.4th at p. 1216.)  However, the "Three Strikes" law "must be

20

interpreted to permit—but not necessarily require—a qualifying prior conviction to be treated as a strike even if the sentence on the conviction has been stayed pursuant to the provisions of section 654." (*Benson*, at p. 36.) Any contention that a prior strike conviction upon which sentence has been stayed *must* be stricken in a later proceeding is "untenable." (*Ibid*.)

Defendant maintains that the Prosecutor's comments to the court were entitled to no evidentiary value whatsoever. Moreover, defendant contends the facts in the probation officer's report are insufficient for the court to have made a factual finding that defendant's prior convictions involved divisible behavior. Thus, defendant argues the court's finding his prior conviction behavior involved divisible behavior was not supported by substantial evidence and, therefore, the court's denial of his *Romero* motion, based in part on this determination, was an abuse of discretion. Defendant requests that this court remand the matter for resentencing, at which time the parties may adduce admissible evidence concerning the circumstances involved in defendant's commission of the prior strike conduct. We hold sufficient admissible evidence was adduced below to support the court's ruling. Moreover, the court acted within its discretion in denying defendant's *Romero* motion.

First, as the People note, by "making his *Romero* motion, defendant undertook the burden to show that a strike should be stricken. Thus, to the extent defendant wanted to show that his two strikes arose from the same act, he had the burden to provide *evidence* of that fact. Thus, gaps or ambiguities about the facts of his two strikes would normally cut against defendant." (*People v. Scott* (2009) 179 Cal.App.4th 920, 925, fn. 2.)

21

Therefore, defendant's failure to adduce evidence below that his strikes arose from the same act forfeits this contention on appeal. (*People v. Stowell* (2003) 31 Cal.4th 1107, 1113 [forfeiture doctrine applies to failure to object to factual findings made at sentencing].)[5]

Second, it is clear from the record defendant had no dispute with the prosecutor's recount of the facts regarding defendant's earlier convictions; he merely disagreed with the prosecution's interpretation of those facts. From the probation officer's report, which defendant concedes has evidentiary value, it is clear that two separate incidents were at issue regarding defendant's prior convictions. The police were called out initially when someone reported persons, including defendant, driving around pointing a gun; the police were called again later with a report of a robbery. Thus, the probation officer's report alone supported a determination that at least two separate offenses had occurred. Additionally, from the court's recitation of the facts immediately upon going on the record, it is clear that the court and counsel had an extensive, off the record discussion of

---

[5] In the event we find defendant forfeited the issue, as we do, defendant also argues his counsel below provided ineffective assistance of counsel by failing to object to the prosecutor's statement of facts and the trial court's reliance upon it. However, "[i]f the record on appeal fails to show why counsel acted or failed to act in the instance asserted to be ineffective, unless counsel was asked for an explanation and failed to provide one, or unless there simply could be no satisfactory explanation, the claim must be rejected on appeal." (*People v. Kraft* (2000) 23 Cal.4th 978, 1068-1069.) Here, the record fails to show why defense counsel failed to provide evidence that defendant's prior convictions were the result of a single course of conduct or why he failed to object to the prosecutor's recount of the facts. Nevertheless, there is a probable answer to be gleaned from the record: Defense counsel declined to so because, in fact, defendant's prior conviction offenses were definitively divisible behavior. Thus, any attempt to contradict the prosecutor's statements would be both frivolous and disingenuous. Therefore, defendant's claim of ineffective assistance of counsel fails.

the facts concerning the prior strike conduct. Thus, the court did not render a factual determination based upon the prosecutor's statements alone, but made its findings after reading the probation officer's report and hearing argument from both counsel regarding the matter.

Third, a review of the abstract of judgment from the prior convictions reveals that the court that sentenced defendant on those offenses did not stay any of the counts pursuant to section 654. Thus, the very court which had the most thorough understanding of the facts of the prior strike convictions had made a determination that they did not involve a single course of conduct. (*People v. Tarris*, *supra*, 180 Cal.App.4th at p. 626 [even in the absence of any reference to section 654 during sentencing, the fact the court did not stay the sentence on any count is deemed to reflect an implied finding that each count constituted a separate offense].) Therefore, the court had before it substantial, admissible evidence upon which to render its finding that defendant's prior strike convictions did not involve one continuous act.

Finally, the court properly exercised its discretion in denying defendant's *Romero* motion. Defendant had incurred five prior felony convictions; four with true findings on attached gang enhancements. Defendant had incurred one prior misdemeanor conviction, likewise with a true finding on an attached gang enhancement. Defendant had an established history of serious, violent offenses. After being paroled, defendant had twice been returned to custody for violations of his parole conditions. Defendant was on parole when he committed the instant offenses; he had been released from prison less than five

23

months earlier.  The trial court balanced the relevant factors and came to an impartial decision.  Defendant cannot be said to be outside the Three Strikes scheme.

## DISPOSITON

Defendant's sentence for count 4 is modified to reflect that the sentence is stayed, pursuant to section 654.  The trial court is directed to prepare an amended abstract of judgment and to forward a certified copy to the Department of Corrections and Rehabilitation.  (§§ 1213, 1216.)  Defendant's conviction on count 6 is reversed.  In all other respects, the judgment is affirmed.

NOT TO BE PUBLISHED IN OFFICIAL REPORTS

/s/ MILLER
J.

We concur:

/s/ McKINSTER
Acting P. J.

/s/ CODRINGTON
J.