Filed 12/11/24  P. v. Barnhill CA4/2

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

# IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FOURTH APPELLATE DISTRICT

## DIVISION TWO

| | |
|---|---|
| THE PEOPLE, | |
| Plaintiff and Respondent, | E082054 |
| v. | (Super.Ct.No. BAF2300330) |
| HENRY MICHAEL BARNHILL, | OPINION |
| Defendant and Appellant. | |

APPEAL from the Superior Court of Riverside County.  Rene Navarro, Judge.

Affirmed in part, vacated in part, reversed in part, and remanded with directions.

Ellen M. Matsumoto, under appointment by the Court of Appeal, for Defendant

and Appellant.

Rob Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney

General, Charles C. Ragland, Assistant Attorney General, Eric A. Swenson and Junichi P.

Semitsu, Deputy Attorneys General, for Plaintiff and Respondent.

1

A jury convicted Henry Michael Barnhill of one count of misdemeanor domestic battery (Pen. Code, § 243, subd. (e)(1)) and one misdemeanor count of simple assault (Pen. Code, § 240), arising out of two separate incidents involving his girlfriend. (Unlabeled statutory references are to the Penal Code.) The jury also convicted Barnhill of numerous other offenses, including one count of felony evasion of law enforcement (Veh. Code, § 2800.2), one misdemeanor count of resisting arrest (Pen. Code, § 148, subd. (a)(1)), and one felony count of making a criminal threat (Pen. Code, § 422). The trial court sentenced Barnhill to 15 years in state prison.

On appeal, Barnhill argues that the trial court prejudicially erred by (1) failing to instruct the jury on self-defense on the misdemeanor battery offense, (2) failing to instruct on unanimity for the criminal threat count, (3) imposing the upper term on that count on the basis of unproven aggravating facts, and (4) not staying a sentence under section 654 for either felony evasion or misdemeanor resisting arrest. We agree about the self-defense instruction and the upper term. We accordingly vacate the misdemeanor battery conviction and vacate the sentence on the criminal threat conviction. We otherwise affirm the judgment. We remand the matter for further proceedings consistent with this opinion.

BACKGROUND

I. *The charges*

The People charged Barnhill by information with several offenses arising from incidents that occurred on April 23 and 29, 2022. The information alleged that on both

2

dates Barnhill committed felony violations of section 273.5 by willfully inflicting corporal injury resulting in a traumatic condition on Jane Doe 1 and that Barnhill had previously suffered a domestic violence conviction. (§ 273.5, subds. (a), (f)(1); counts 1 & 2.) With respect to count 1, the information also alleged that Barnhill inflicted great bodily injury on Doe 1. (§ 12022.7, subd. (e).)

The information further alleged that Barnhill committed: (1) seven additional felonies, including one count of making a criminal threat (§ 422; count 4), one count of felony evasion of law enforcement (Veh. Code, § 2800.2; count 8), and several counts of possession of firearms and ammunition by a prohibited person (§§ 29800, subd. (a)(1), 29825, subd. (a), 30305, subd. (a)(1); counts 6, 7, 9); and (2) one misdemeanor, namely, resisting arrest (§ 148, subd. (a)(1); count 10). It was also alleged that Barnhill personally used a firearm—"a/an Polymer 80 handgun"—in making the criminal threat (§ 12022.5, subd. (a)) and that he had a prior serious felony conviction (§§ 667, subd. (a), 12022.7, subd. (e)) and a prior strike conviction (§§ 667, subds. (c), (e)(1), 1170.12, subd. (c)(1)).

II.     *Barnhill's offenses against a prior victim*

Jane Doe 2 dated and lived with Barnhill in 2016. Doe 2 testified that she "was attacked and terrorized most of the relationship" and that Barnhill "was physical with [her] every chance he got." She described numerous incidents in which Barnhill acted violently toward her, including by wrapping a purse strap around her neck, picking her up by her neck, throwing her against a wall, choking her, hitting her, spitting in her face,

3

"bash[ing her] over the head," and punching her. In December 2016, Doe 2 called law enforcement about Barnhill because he had "bashed [her] over the head" and "busted [her] eardrum."

Barnhill admitted that he was arrested in December 2016. In January 2020, he pled guilty to three counts of committing domestic violence against Doe 2 in violation of section 273.5 and one count of assaulting Doe 2 with the intent to cause great bodily injury, and he admitted an allegation that Doe 2 suffered great bodily injury.

III. *Barnhill's relationship with Doe 1*

In January 2021, Barnhill started dating Doe 1. The two moved in together within a couple of months, and Doe 1's five-year-old daughter moved in with them shortly thereafter. Doe 1 lived near Barnhill's sister, Latasha L. Doe 1 testified that the relationship was "really good" in the beginning but that "[i]t started getting physical" during the summer of 2021.

IV. *The April 2022 incidents*

Doe 1 testified that she and Barnhill got into an argument on April 23, 2022. According to Doe 1, Barnhill pushed her onto her bed, straddled her by pinning down her arms with his knees, put his hands around her neck, and strangled her by "squeezing [her] neck." Doe 1 is five feet four inches tall and then weighed 170 pounds, and Barnhill is six foot three inches tall and then weighed about 250 pounds. Doe 1 screamed, and Barnhill placed a pillow over her face. She fought to get out of the hold and eventually

4

"wiggl[ed] [her] way out." Afterward, Doe 1's eyes were red, and her peripheral vision remained blurry for "a couple weeks."

On the night of April 28, 2022, Barnhill went to his sister's house after Doe 1 went to bed. Barnhill returned home at around 3:30 a.m. and questioned Doe 1 about whether she was cheating on him with her ex-husband. Barnhill was "[v]ery angry" and acted "very aggressive." Barnhill told Doe 1 that "if [she] ever cheated on him, he would blow [her] brains out." The couple continued arguing and "ended up at the edge of [the] bed," where Barnhill "pulled out a gun, pointed it to [her] face, and said that if [she] ever cheated on him, he would blow [her] brains out." Doe 1 said that Barnhill was "standing right in front of" her with the barrel of the gun about one-half inch from her face, and she believed that he "was going to pull the trigger."

Barnhill had pulled the gun out of the pocket of his sweatshirt. Doe 1 described the gun as a black and silver "Smith & Wesson 40 something" or "a bigger size handgun" that belonged to her. Barnhill had instructed her to buy the gun, which she kept in a gun safe in her bedroom closet.

Doe 1 testified that, sometime after Barnhill threatened her with the gun, he started choking her while they were both standing. He was no longer holding the gun. Doe 1 fell onto the bed on her back, with Barnhill's hands still on her neck. Barnhill pinned Doe 1's arms down with his legs. According to Doe 1, Barnhill strangled her for "[p]robably a minute or less," but "it felt like forever." When Barnhill stopped choking

5

her, he locked the bedroom doors, took Doe 1's keys and phone, and told her to go to sleep.

In the morning, Doe 1 told Barnhill that she was taking her daughter to school. He responded, "'No, we're both going,'" and he then drove Doe 1's daughter to school with Doe 1 in the front passenger seat. When they arrived at school, Doe 1 fabricated an excuse to go into the school office, and Barnhill allowed her to go. Doe 1 told a school employee that she was in danger and "needed help."

Doe 1 called 911. She told the dispatcher that she was at her daughter's school and feared for her life because on the previous night her boyfriend "threatened to kill [her] multiple times" and "had a gun to [her] face." Doe 1 informed the dispatcher that Barnhill was parked outside the school, waiting for her. Doe 1 described Barnhill, said that he was driving a Dodge Challenger, and told the dispatcher where he was parked.

V.     *Barnhill's flight and arrest*

Law enforcement officers were dispatched to the elementary school. Three marked black and white police patrol cars parked behind the Dodge Challenger, which the officers identified by license plate number. The officers turned on the patrol cars' overhead lights. Three uniformed law enforcement officers got out of their cars and approached the Dodge Challenger with their weapons drawn, and one officer yelled, "'Driver, step out of the vehicle with your hands up.'" Barnhill did not comply, started the engine, and "immediately sped off," loudly accelerating and traveling at "a high rate of speed."

6

The three officers jumped into two patrol cars and followed Barnhill with both cars' overhead lights and sirens turned on. Barnhill drove about 50 miles per hour or faster through a residential and school-zoned neighborhood with a speed limit of 25 miles per hour. He also ran two stop signs. He then entered a 40-mile-per-hour zone, where he accelerated to about 60 miles per hour. Barnhill drove through a red stoplight at a four-way intersection, where he maneuvered around five or six cars in his path. He then drove through a gas station, where several customers were pumping gas. Upon exiting the gas station, he drove on the wrong side of an adjacent street.

Barnhill stopped the car approximately one and one-half miles away from the school. He stopped near Doe 1's house. Barnhill got out of the car and ran toward the house. The officers exited their cars, drew their weapons, ran after Barnhill, and yelled at him to stop and show them his hands, which "were kind of concealed in his front waist band." Barnhill got to the front door, where one of the officers noticed that he was fumbling with keys and did not appear armed. One officer used a taser on Barnhill. An officer testified that the taser was not effective "[b]ecause the defendant still continued to resist after it was deployed." Another officer tackled Barnhill away from the front door, and Barnhill ended up seated in a chair on the porch. Throughout the interaction, that officer who tackled Barnhill was yelling at him to get on the ground. The officers attempted to grab Barnhill's hands, which were above his head, and one of the officers said that Barnhill attempted to pull away by rotating his arm in a way that was making

the officer lose his grip of Barnhill's wrist. The officers eventually gained control of Barnhill and arrested him.

VI.    *The investigation*

Law enforcement searched Doe 1's residence and found a black Polymer 80 handgun without a serial number on a nightstand in her bedroom. The gun was loaded with 10 rounds of live ammunition. Additional ammunition was stored underneath the bed. Law enforcement also found a .40 caliber Smith & Wesson along with 100 rounds of ammunition located in a gun safe in the bedroom closet. Law enforcement broke into the safe with a sledgehammer.

A law enforcement officer interviewed Doe 1 at the elementary school on April 29, 2022. He noticed that she had bruising on her arm, chest, and neck. The officer photographed Doe 1's injuries, and those photographs were admitted into evidence. He also saw "redness in her right eye," which a forensic nurse examiner described from a photograph as conjunctival hemorrhaging.

VII.    *Defense evidence*

Two of Barnhill's sisters (not Latasha) testified on his behalf. One sister testified that the day after the incident she asked Doe 1 what happened, and Doe 1 told her that Barnhill "shouldn't have cheated on her." The other sister also spoke with Doe 1 after Barnhill was in jail, and Doe 1 told her "that's what he gets for cheating on me."

Barnhill also testified. He said that he never hit Doe 1 or "lay hands on her." Barnhill said that on the night of April 23, 2022, he was planning to see another woman

8

with whom he was romantically involved. Barnhill lied to Doe 1 about his intended destination. Doe 1 was angry and accused Barnhill of going to see another woman. Barnhill said that Doe 1 pulled a gun out from underneath her pillow, stood up, and pointed it at him. Doe 1 struggled to cock the weapon, and the gun fired, startling her and causing her to drop the gun. One of Barnhill's sisters testified that Doe 1 admitted firing a gun at Barnhill and told the sister that it fired accidentally.

Barnhill testified that after the gun fired, he walked toward Doe 1 and demanded that she give him the gun. Barnhill described what happened next as follows: "So she immediately jumps at the gun, and she jumps on the bed with the gun, and you know, so I jump over the bed, you know, to get the gun. And she takes the gun, and she's like backing away from me with it, like she's trying to keep it from me. She's not—she's not aiming it at me or nothing like that, but it's like she's trying to keep it away from me. So I crawl over the bed, I straddled her, I'm on top of her, and she has the gun holding it outwards, like she's trying to keep it away from me." Barnhill was on top of Doe 1, straddling her upper body while she was holding the gun in her right hand. He grabbed her right hand to prevent her from putting her finger on the trigger. He did not want her to fire the gun intentionally or accidentally. He was afraid and feared for his life because she had the gun. Doe 1 was physically resisting Barnhill and would not release the gun, so Barnhill grabbed Doe 1 by the face with one hand, squeezing both of her cheeks. Barnhill was eventually able to get the gun out of Doe 1's hand by using both of his hands.

The following week, on the night of April 28, 2022, Barnhill went to his sister Latasha's house after Doe 1 fell asleep. Doe 1 later awoke, realized that Barnhill was gone, and texted him that she was upset. When Barnhill returned home, Doe 1 confronted Barnhill about cheating on her. Barnhill responded angrily by repeatedly telling Doe 1 that he would let Latasha "kick [her] ass." The couple fell asleep, and Barnhill repeated the same threat the following morning before taking Doe 1's daughter to school.

Barnhill testified that he fled from the school because he noticed a gun in the car window and it scared him. He did not notice the presence of law enforcement officers. Barnhill said that he drove home safely and responsibly. He denied that he was attempting to evade law enforcement and also denied that he resisted arrest, explaining that he was trying to protect his face.

VIII. *The verdict and sentencing*

The jury found Barnhill not guilty of felony willful infliction of corporal injury on a cohabitant resulting in traumatic injury as alleged in counts 1 and 2. (§ 273.5, subd. (a); counts 1 & 2.) The jury found Barnhill guilty of the lesser included offense of misdemeanor domestic battery (§ 243, subd. (e)(1)) with respect to count 1, and the jury found Barnhill guilty of the lesser included offense of simple assault with respect to count 2 (§ 240). The jury also found Barnhill guilty of making a criminal threat (§ 422; count 4) but found not true the allegation that he personally used a firearm, "to wit: Polymer 80 Handgun," in committing that offense (§ 12022.5, subd. (a)). In addition, the jury found

Barnhill guilty of the three firearm and ammunition possession offenses (§§ 29800, subd. (a)(1), 29825, subd. (a), 30305, subd. (a)(1); counts 6, 7, & 9), the one count of felony evasion (Veh. Code, § 2800.2; count 8), and the one count of misdemeanor resisting arrest (§ 148, subd. (a)(1); count 10).  With respect to the firearm and ammunition possession offenses, the jury found true that in January 2020 Barnhill was convicted of violating section 273.5, subdivision (a).

In a separate bench trial, the court found true that Barnhill's January 2020 felony conviction for domestic violence (§ 273, subd. (a)) along with the great bodily injury enhancement (§ 12022.7, subdivision (e)) constitutes a prior serious felony and a prior strike conviction.  (§§ 667, subd. (a), 667, subds. (c), (e)(1), 1170.12, subd. (c)(1).)  To prove the prior conviction, the prosecution introduced a certified copy of Barnhill's rap sheet and Barnhill's plea form from January 2020.

The trial court sentenced Barnhill to an aggregate determinate sentence of 15 years for the felonies and concurrent six-month jail sentences for each for the three misdemeanors.

DISCUSSION

I.      *Self-defense instruction*

Barnhill contends that the trial court prejudicially erred by failing to instruct the jury on self-defense for the lesser included offense of misdemeanor battery on count 1. We agree.

11

A.     *Relevant proceedings*

The court instructed the jury on misdemeanor simple battery against a cohabitant (§ 243, subd. (e)(1)) as a lesser included offense for count 1 (based on the events of April 23, 2022). The court instructed the jury that in order for the jury to find Barnhill guilty of simple battery the prosecution had to prove that: (1) "The defendant willfully and unlawfully touched [Doe 1] in a harmful or offensive manner;" (2) Doe 1 "and the defendant had a previous dating relationship;" and (3) "The defendant did not act in self-defense." (CALCRIM No. 841.) The court further instructed: "Someone commits an act *willfully* when he does it willingly or on purpose. It is not required that he intend to break the law, hurt someone else, or gain any advantage. [¶] The slightest touching can be enough to commit a battery if it is done in a rude or angry way. Making contact with another person, including through her clothing, is enough. The touching does not have to cause pain or injury of a kind."

Defense counsel's written request for instructions included CALCRIM No. 3470, which explains the law on the right to self-defense in a case not involving homicide. CALCRIM No. 3470 provides that self-defense is a defense to a specified crime, and a defendant is not guilty of the offense if he or she used force against the alleged victim in lawful self-defense. The instruction defines lawful self-defense as follows: (1) "The defendant reasonably believed that [he or she] was in imminent danger of suffering bodily injury . . . ;" (2) "The defendant reasonably believed that the immediate use of force was necessary to defend against that danger;" and (3) "The defendant used no more

12

force than was reasonably necessary to defend against that danger." (CALCRIM No. 3470.) The instruction otherwise defines imminent harm, reasonable force, and reasonable belief in that harm. (CALCRIM No. 3470.)

The court did not give the jury CALCRIM No. 3470 and did not otherwise instruct the jury on self-defense. The instructions conference was held off the record.

In closing argument and during rebuttal, the prosecutor argued that the jury should find Barnhill guilty of felony domestic violence for count 1 based primarily on Doe 1's testimony that Barnhill strangled her. In rebuttal, the prosecutor told the jury that if it found Barnhill not guilty of felony domestic violence on count 1, then the jury would have to consider whether Barnhill was guilty of a lesser included offense. The prosecutor argued: "And so if you think that he hit her but he didn't cause an injury, that's what misdemeanor domestic battery is, you'll circle guilty."

Defense counsel argued in closing: "Count 1, domestic violence on April 23rd. Mr. Barnhill did jump on top of her, he did hold her down because he needed to get that gun away from her. He acted in self-defense, and he is entitled to do that. The law says you may act in self-defense, and that's exactly what he did here. He didn't strangle her, he didn't choke her, he didn't do any of that. He did exactly what he said he did. And what's interesting about self-defense is you might think I have to prove that. I don't. The prosecution has the burden to prove it was not self-defense."

13

B.   *Analysis*

"A trial court must instruct the jury sua sponte on general principles of law applicable to the case," including any defense supported by substantial evidence that "is not inconsistent with the defendant's theory of the case." (*People v. Villanueva* (2008) 169 Cal.App.4th 41, 49 (*Villanueva*); *People v. Barton* (1995) 12 Cal.4th 186, 195.)  In "deciding whether the evidence is sufficient to warrant a jury instruction, the trial court does not determine the credibility of the evidence, but only whether there is evidence which, if believed by the jury, is sufficient to raise a reasonable doubt of guilt." (*People v. Orlosky* (2015) 233 Cal.App.4th 257, 269-270.)  We independently review claims of instructional error.  (*People v. Mitchell* (2019) 7 Cal.5th 561, 579.)

Barnhill testified that on April 23, 2022, he straddled Doe 1, pinned her on the bed, grabbed her face, and wrestled with her because he feared for his life after she pointed a gun at him and it accidentally discharged.  According to Barnhill, he used force in order to defend himself against being shot by Doe 1 accidentally or otherwise. Barnhill's account of the incident constitutes substantial evidence from which the jury could reasonably infer that Barnhill reasonably believed that he was in imminent danger of suffering bodily injury, that the immediate use of force was necessary to defend himself against the danger, and that he used a reasonable amount of force to defend against that danger.  Given that substantial evidence supported Barnhill's claim of self-defense and that he actually relied on that theory, the trial court had a sua sponte obligation to instruct the jury on self-defense.  (*Villanueva*, *supra*, 169 Cal.App.4th at p.

14

49.)  The court therefore erred by failing to instruct the jury on self-defense as it related to simple battery.

The People's arguments to the contrary are unavailing.  A challenge to the trial court's failure to instruct sua sponte "required no trial court action by the defendant to preserve it," so we reject the People's argument that Barnhill forfeited the challenge by failing to object in the trial court.  (*People v. Boyer* (2006) 38 Cal.4th 412, 441, fn. 17.)  We also reject the People's contention that CALCRIM No. 3470 would have merely clarified the meaning of "self-defense," so the court did not have a sua sponte duty to provide it to the jury.  (See *People v. Rundle* (2008) 43 Cal.4th 76, 151, disapproved on another ground by *People v. Doolin* (2009) 45 Cal.4th 390, 417-421.)  Instructing the jury on the elements of self-defense would not merely have clarified the law; it would have instructed the jury on the legal requirements of the defense, on which the People bore the burden of proof.  (Cf. *People v. Estrada* (1990) 11 Cal.4th 568, 574-575 ["terms are held to require clarification by the trial court when their statutory definition differs from the meaning that might be ascribed to the same terms in common parlance"].)  Moreover, even assuming for the sake of argument that giving CALCRIM No. 3470 would have merely clarified the meaning of "self-defense," the trial court nevertheless would have been required to give it sua sponte because self-defense has "'"'a technical meaning peculiar to the law.'"'"  (*People v. Ellis* (1999) 69 Cal.App.4th 1334, 1338.)

The People also contend that the evidence was insufficient to support a self-defense finding because "the People's sole focus when discussing the conduct underlying

15

Count 1 was the evidence that [Barnhill] choked [Doe 1] on April 23, 2022" and defense counsel "never argued . . . that if [Barnhill] did strangle his girlfriend, that he did so out of self-defense." The argument is not supported by the record. As to the lesser included offense of misdemeanor battery, the prosecutor did not focus on Barnhill's act of strangling Doe 1 but instead argued that the jury could find Barnhill guilty of that offense if it found that Barnhill merely struck Doe 1 but did not injure her.

Having concluded that the trial court erred by not instructing the jury with CALCRIM No. 3470, we next analyze whether the instructional error was prejudicial. The California Supreme Court has "yet to determine whether a trial court's failure to instruct on a requested affirmative defense instruction supported by substantial evidence is federal constitutional error or state law error." (*People v. Gonzalez* (2018) 5 Cal.5th 186, 199; *People v. Salas* (2006) 37 Cal.4th 967, 984; see also *Chapman v. California* (1967) 386 U.S. 18, 24 [federal harmlessness standard]; *People v. Watson* (1956) 46 Cal.2d 818, 836-837 [state law harmlessness standard].) We need not resolve the question in this case, because the error was prejudicial even under the state law standard. Under that standard, reversal is warranted if it is "'reasonably probable that a result more favorable to the appealing party would have been reached in the absence of the error.'" (*Watson*, at pp. 836-837.) In this context, a probability ""'does not mean more likely than not, but merely a *reasonable chance*, more than an *abstract possibility*.'"" (*Richardson v. Superior Court* (2008) 43 Cal.4th 1040, 1050.)

16

The jury found Barnhill not guilty of the felony domestic violence count arising from the same events and accordingly also found not true the associated great bodily injury enhancement. Those findings indicate that the jury did not entirely believe Doe 1's version of events. Given that Barnhill admitted that he used force against Doe 1 in the April 23, 2022, encounter, the jury could have disbelieved Doe 1's version of the account in its entirety, believed Barnhill's version, and still found Barnhill guilty of simple battery. Although the jury was instructed that it had to find that Barnhill did not act in self-defense in order to convict him of misdemeanor simple battery, the jury was not given any guidance on the law of self-defense. The jury thus was left to its own devices to define the term according to the court's instruction that "[w]ords and phrases not specifically defined in these instructions are to be applied using their ordinary, everyday meanings." (CALCRIM No. 200.) But self-defense is an affirmative defense with specific legal requirements that the jury needed to find were not satisfied in order to convict Barnhill. In light of the jury's other findings related to the incident, it is possible that the jury would have found that Barnhill's use of force satisfied the legal definition of self-defense, if the jury had been properly instructed on self-defense. Given the jury's rejection of Doe 1's full version of the events, there is a reasonable probability that the same jury would have returned a verdict more favorable to Barnhill on the lesser included offense of misdemeanor domestic battery had it been instructed on self-defense.

17

For all of these reasons, we conclude that it was prejudicial error not to instruct the jury on self-defense. We accordingly reverse the conviction under section 243, subdivision (e)(1), and remand for proceedings consistent with this opinion.

II.      *Unanimity*

Barnhill argues that the trial court prejudicially erred by failing to give the jury a unanimity instruction with respect to the criminal threats count (§ 422; count 4). We are not persuaded.

In order to prove the offense of making a criminal threat in violation of section 422, the prosecution has the burden of demonstrating "(1) that the defendant 'willfully threaten[ed] to commit a crime which will result in death or great bodily injury to another person,' (2) that the defendant made the threat 'with the specific intent that the statement . . . is to be taken as a threat, even if there is no intent of actually carrying it out,' (3) that the threat—which may be 'made verbally, in writing, or by means of an electronic communication device'—was 'on its face and under the circumstances in which it [was] made, . . . so unequivocal, unconditional, immediate, and specific as to convey to the person threatened, a gravity of purpose and an immediate prospect of execution of the threat,' (4) that the threat actually caused the person threatened 'to be in sustained fear for his or her own safety or for his or her immediate family's safety,' and (5) that the threatened person's fear was 'reasonabl[e]' under the circumstances." (*People v. Toledo* (2001) 26 Cal.4th 221, 227-228.)

18

"In a criminal case, 'the jury must agree unanimously the defendant is guilty of a specific crime.'" (*People v. Covarrubias* (2016) 1 Cal.5th 838, 877.) "Therefore, when the evidence suggests more than one discrete crime, either (1) the prosecution must elect among the crimes or (2) the trial court must instruct the jury that it must unanimously agree that the defendant committed the same criminal act." (*People v. Hernandez* (2013) 217 Cal.App.4th 559, 569.) "The prosecution can make an election by 'tying each specific count to specific criminal acts elicited from the victim['s] testimony'—typically in opening statement and/or closing argument." (*People v. Brown* (2017) 11 Cal.App.5th 332, 341 (*Brown*); *People v. Brugman* (2021) 62 Cal.App.5th 608, 627 (*Brugman*).) "'Under these principles, there is an implicit presumption that the jury will rely on the prosecution's election and, indeed, is bound by it.'" (*Brugman*, at p. 627.) We independently review whether the trial court erred by failing to instruct on unanimity. (*Hernandez*, at p. 568.)

During closing argument, the prosecutor generally described what happened on April 29, 2022, as follows: Barnhill "points this gun, a foot away from [Doe 1's] face, says, 'If I ever find out you're cheating on me, I'm going to blow your shit off,' with a gun a foot in front of her nose." In describing why Doe 1 did not ask for help that night, the prosecutor remarked: "The defendant had just showed her within the past week that he could end her life with his own bare hands. And not only that he had pointed a gun in her face and threatened her, and it wasn't the first time that he threatened her." In discussing count 4 specifically, the prosecutor stated: "The defendant is charged in

Count 4 with making criminal threats. And the first element is that the defendant threatened to unlawfully kill ([Doe 1]), 'If I find out you're cheating, I'm going to blow your shit off.'" The prosecutor reiterated that the threat Barnhill made was telling Doe 1, "'If I find out you're cheating, I'm going to blow your brain off.'" The prosecutor explained that threats are "usually conditional" in that "the person making the threat hopes that whatever expectation that is set, whatever that expectation is, is met so that they don't have to carry that threat out. He had the gun in his hand. That threat had to actually cause [Doe 1] to be in sustained fear and that fear has to be reasonable." With respect to whether the threat caused Doe 1 to be in sustained fear, the prosecutor remarked: "She's still terrified, reasonably so. Your boyfriend points a gun in your face, strangles you where you feel like you're about to black out . . . ." She also told the jury: "He meant to scare her. And how did he do that? With the firearm."

Doe 1 testified that during the April 29, 2022, incident Barnhill twice threatened to "blow [her] brains out." Each threat could have formed the basis of the criminal threat charge. There accordingly "was a risk that, unless instructed otherwise, different members of the jury could rely on different incidents in finding [Barnhill] guilty in [count 4], which would result in an impermissible nonunanimous verdict." (*Brugman*, *supra*, 62 Cal.App.5th at p. 628.) However, the prosecutor eliminated that risk by making a clear election during closing argument with respect to the specific conduct on which count 4 was based. The prosecutor twice specified that count 4 was based on the threat to blow Doe 1's brains out that Barnhill made when he "had the gun in his hand," "point[ed] a

20

gun in [her] face," and threatened her "with the firearm." The only evidence that "the prosecutor discussed in arguing that the elements of that count were established was the evidence relating to that same incident." (*Id.* at p. 629.) "This type of direct and clear statement qualifies as an effective election." (*Ibid.*) By tying count 4 to a specific criminal act described in Doe 1's testimony—the threat to blow Doe 1's brains out that Barnhill made when holding a gun—the prosecutor made an election that satisfies the unanimity requirement. (*Id.* at p. 628.) "Such an election removes the need for a unanimity instruction." (*Brown*, *supra*, 11 Cal.App.5th at p. 341.)

Barnhill does not deny that "the prosecutor did not mention [his] first threat to blow [Doe 1's] brains out and only argued that the second threat to blow her brains out when he used her gun was a criminal threat." Relying on *People v. Melhado* (1998) 60 Cal.App.4th 1529 (*Melhado*), he contends that the prosecutor's argument nevertheless suffered from a "lack of clarity," thus requiring the trial court to give a unanimity instruction. We disagree.

Barnhill's reliance on *Melhado* is misplaced. In *Melhado*, the defendant was charged with one count of making a criminal threat in violation of section 422 but made three similar threats at different times on the same day. (*Melhado*, *supra*, 60 Cal.App.4th at pp. 1532-1533.) During closing argument, the prosecutor quoted the 11 a.m. threat verbatim, described the victim's reaction to that threat, and argued that those facts satisfied the elements of the offense. (*Id.* at p. 1535.) But the prosecutor otherwise discussed the other two threats made by the defendant. (*Id.* at pp. 1535-1536.) The Court

21

of Appeal concluded that the prosecutor had not made a clear election for purposes of unanimity. (*Id.* at p. 1536.) The court reasoned that even though it was "possible to parse the prosecution's closing argument in a manner which suggest[ed] that more emphasis was placed on the 11 a.m. event than on the others," "the argument did not satisfy the requirement that the jury either be instructed on unanimity or informed that the prosecution had elected to seek conviction *only* for the 11 a.m. event." (*Ibid.*)

*Melhado* is distinguishable because, as Barnhill correctly concedes, the prosecutor never specifically mentioned any other threats that Barnhill allegedly made. The prosecutor generally acknowledged that Barnhill had otherwise threatened Doe 1, but the prosecutor did not mention any specific facts of the other threats, instead describing in detail only the threat that Barnhill made while holding the gun. Moreover, the prosecutor expressly tied count 4 to the threat that Barnhill made with the gun. Thus, unlike the prosecutor in *Melhado*, the prosecutor here made a clear election that the threat made while Barnhill was pointing the gun at Doe 1 was the only threat that could form the basis of the offense. (See *Brugman*, *supra*, 62 Cal.App.5th at pp. 628-629.)

For the foregoing reasons, we conclude that the trial court did not err by not instructing the jury on unanimity for count 4.

III. *Section 654*

The trial court sentenced Barnhill to one year four months for the felony evasion count and a concurrent six-month jail sentence for the resisting arrest count. The court did not make express findings concerning the application of section 654 to those counts.

22

Barnhill contends that the trial court erred by not staying his sentence for either felony evasion (Veh. Code, § 2800.2; count 8) or misdemeanor resisting arrest (§ 148, subd. (a)(1); count 10). We find no error.

Section 654 provides: "An act or omission that is punishable in different ways by different provisions of law may be punished under either of such provisions, but in no case shall the act or omission be punished under more than one provision." (§ 654, subd. (a).) The provision "'prohibits multiple punishment for the same "act or omission."'" (*People v. Correa* (2012) 54 Cal.4th 331, 337.) "This restriction applies not only to a single act violating multiple code provisions, but also to an indivisible '"course of conduct"' violating several statutes." (*People v. Fuentas* (2022) 78 Cal.App.5th 670, 680.) "'Whether a course of criminal conduct is divisible and therefore gives rise to more than one act within the meaning of section 654 depends on the intent and objective of the actor. If all of the offenses were incident to one objective, the defendant may be punished for any one of such offenses but not for more than one.'" (*Correa*, at p. 336.)

"Whether section 654 applies in a given case is a question of fact for the trial court, which is vested with broad latitude in making its determination." (*People v. Jones* (2002) 103 Cal.App.4th 1139, 1143.) "In the absence of any reference to [section 654] during sentencing, the fact that the court did not stay the sentence on any count is generally deemed to reflect an implicit determination that each crime had a separate objective." (*People v. Tarris* (2009) 180 Cal.App.4th 612, 626.) We uphold the trial court's express or implied factual findings if supported by substantial evidence. (*People*

*v. Brents* (2012) 53 Cal.4th 599, 618.) "We review the trial court's determination in the light most favorable to the [People] and presume the existence of every fact the trial court could reasonably deduce from the evidence." (*Jones*, at p. 1143.)

Substantial evidence supports the trial court's implied finding that Barnhill harbored separate intents and objectives in evading law enforcement and in resisting arrest. It was reasonable for the trial court to infer that in evading law enforcement in the vehicle pursuit, Barnhill's intent was to get away from law enforcement to avoid getting caught and going to jail. It also was reasonable for the trial court to infer that Barnhill's objective when he exited the car and resisted arrest was no longer to evade capture but instead was to get inside the house in order to hide exculpatory evidence, namely, the firearms and ammunition that he was not allowed to possess.

We therefore conclude that the trial court's failure to stay the sentences imposed for the felony evasion and misdemeanor resisting arrest offenses (counts 8 & 10) is supported by substantial evidence.

IV.     *Upper term on count 4*

Barnhill's felony violation of section 422 is punishable by terms of 16 months, two years, or three years (§ 18), doubled because of the prior strike conviction (§ 1170.12, subd. (c)(1)). Barnhill contends that the trial court prejudicially erred by "imposing the upper term of three years on count 4 because no aggravating factors were alleged and proved" under section 1170, subdivision (b) (§ 1170(b)). (Capitalization

omitted.) We agree that the trial court erred by relying on unproven aggravating factors to impose the upper term, and the error was prejudicial.

A. *Relevant proceedings*

The information alleged numerous aggravating factors, including that "the offense involved great violence, great bodily harm, threat of great bodily harm, or other acts disclosing a high degree of cruelty, viciousness, or callousness within the meaning of California Rules of Court, rule 4.421(a)(1)." The court bifurcated the trial on the aggravating factors but subsequently struck the allegations before sentencing, at the prosecution's request.

Barnhill admitted during trial that he had a criminal record. He testified that in 2010 he was convicted of human trafficking in violation of section 236.1 and of pimping in violation of section 266h, subdivision (a). He further testified that with respect to Doe 2 in 2020 he pled guilty to three counts of domestic violence (§ 273.5) and one count of assault intended to cause bodily injury (§ 245, subd. (a)(4)) and admitted that Doe 2 suffered great bodily injury.

At sentencing in September 2023, the court imposed the upper term for count 4. The court explained its reasoning as follows: "The court finds that the protection of society and punishment are primary importance the sentencing objectives in this matter. In addition, pursuant to Penal Code section 1170(b)(3) together with the totality of the circumstances attending the commissions of the crimes of which the defendant was convicted, together with the reasonable inferences and the actions drawn therefrom and

25

the defendant['s] criminal history and record of convictions, the court finds that the aggravating factors outweigh the mitigating factors such that the court will select the upper term for the imposition of a sentence as to Count 4." Defense counsel objected to the court "choosing the upper law" on the basis that "the only aggravating circumstance the court has if the court can consider is prior convictions as the other aggravating circumstances were dismissed by the prosecution." Defense counsel also noted that there were mitigating circumstances in that Doe 2 admitted to abusing Barnhill. The court agreed about the mitigating circumstance but found it too slight to warrant imposing the middle term, reasoning that "[t]he appropriate term given the totality of the circumstances as the court indicated [in] its analysis is the upper term based on all the factors that the court enumerated."

B. *Analysis*

Rule 4.421 of the California Rules of Court sets forth circumstances in aggravation that a court may consider in sentencing, including "[f]actors relating to the crime, whether or not charged or chargeable as enhancements." (Cal. Rules of Court, rule 4.421(a).) Effective January 1, 2022, section 1170(b) "provides that the upper term shall be imposed 'only when there are circumstances in aggravation of the crime that justify the imposition of a term of imprisonment exceeding the middle term' (*id.*, subd. (b)(2)) and the circumstances are (1) stipulated to by the defendant, (2) found true by the trier of fact beyond a reasonable doubt, or (3) based on prior convictions evidenced by a certified record of conviction (*id.*, subd. (b)(2)-(3))." (*People v. Butler* (2023) 89

26

Cal.App.5th 953, 958, overruled on another ground in *People v. Lynch* (2024) 16 Cal.5th 730, 768-769 (*Lynch*).)

A trial court violates a defendant's Sixth Amendment right to a jury trial when it "relies on unproven aggravating facts to impose an upper term sentence, even if some other aggravating facts relied on have been properly established." (*Lynch*, *supra*, 16 Cal.5th at p. 768.) The violation is prejudicial unless we can "conclude beyond a reasonable doubt that the jury would have found the unproven aggravating facts to be true had it been properly instructed. This prejudice inquiry does not allow us to uphold the trial court's imposition of an upper term sentence based on some subset of aggravating facts." (*Id.* at p. 761.)

The trial court erred by imposing the upper term on count 4 because it relied not only on Barnhill's "record of convictions" but also on "the totality of the circumstances attending the commissions of the crimes of which the defendant was convicted, together with the reasonable inferences and the actions drawn therefrom." The court did not specify what circumstances concerning the crimes' commission it considered. Because the trial court did not identify the facts relied on, we cannot "conclude beyond a reasonable doubt that the jury would have found the unproven aggravating facts to be true had it been" asked to do so. (*Lynch*, *supra*, 16 Cal.5th at p. 761.)

We remand the matter for resentencing. Given the prosecution's voluntary dismissal of all of the aggravating factors alleged in the information, the trial court on remand may consider whether to impose the upper term on count 4 on the basis of the

prior convictions that Barnhill admitted at trial. (§ 1170, subd. (b)(2); *People v. Dorado* (2024) 105 Cal.App.5th 717, 739-740.) Moreover, because we are vacating Barnhill's sentence on count 4, he is entitled to a full resentencing, and we accordingly vacate his entire sentence. (*People v. Buycks* (2018) 5 Cal.5th 857, 893.) Under the full resentencing rule, "when part of a sentence is stricken on review, on remand for resentencing 'a full resentencing as to all counts is appropriate, so the trial court can exercise its sentencing discretion in light of the changed circumstances.'" (*Ibid.*; *People v. Valenzuela* (2019) 7 Cal.5th 415, 424-425.) The sentence imposed on resentencing may not exceed the original aggregate sentence. (*People v. Jones* (1994) 24 Cal.App.4th 1780, 1783-1784; *People v. Hanson* (2000) 23 Cal.4th 355, 357-358.)

## DISPOSITION

The count 1 conviction under section 243, subdivision (e)(1), is reversed. On remand, the prosecutor may choose to retry Barnhill on that count. We vacate the sentence and remand the matter for resentencing consistent with this opinion. In all other respects, the judgment is affirmed.

NOT TO BE PUBLISHED IN OFFICIAL REPORTS

MENETREZ
J.

We concur:

McKINSTER
Acting P. J.

FIELDS
J.

28